SIMPLOT ET AL. V. THE CITY OF DUBUQUE.

1. **Estoppel:** MUNICIPAL CORPORATION: EVIDENCE CONSIDERED. Evidence considered and held sufficient to establish facts which estopped the defendant city from claiming title to certain real estate as against the plaintiffs.

*Appeal from Dubuque District Court.*

WEDNESDAY, OCTOBER 19.

ACTION in equity to restrain the defendant from entering upon and improving as a street a small triangular tract of land within the limits of the defendant city; and to quiet title to the same. The defendant denies that the plaintiffs are the owners of the land, and avers that the land is public, and that the title is held in trust by the defendant city for the public. There was a decree for the plaintiffs. The defendant appeals.

*James H. Shields*, for appellant.

*Myron H. Beach*, for appellee.

ADAMS, CH. J.—This cause was tried originally upon oral testimony, and judgment was rendered for the defendant. Upon appeal the judgment was reversed. 49 Iowa, 630. It was held by this court that the acts of the defendant city had been such that it was estopped from setting up title to the property. We are not at liberty now to review the correctness of that decision, because it has become the law of the case. *Adams County v. B. & M. R. R. Co.*, 55 Iowa, 94.

It is contended, however, that upon the former appeal the court misapprehended the facts; and furthermore that upon this appeal there is a somewhat different showing as to the facts. The defendant claims that the facts now shown, but

not shown upon the former appeal, or misapprehended, are: that the land in controversy was a part of Front street; that this is admitted by the plaintiffs; that it was never claimed by them as a part of lot 530, of which it is conceded that they are the owners; that it is not true that the plaintiffs, and those through whom they claim, have occupied it since 1840, and that they only claim to have occupied it since 1853; that the city council did not order the land in controversy filled, but only lot 530, and that the plaintiffs or those through whom they claimed only paid for filling lot 530; that the plaintiffs were never required to pay for macadamizing First street abutting the land in controversy, and that prior to the act of February 14, 1853, the land had been used as public property.

We shall not stop to inquire whether all the above facts are true as claimed by the defendant. We think that it is not shown that the land was ever used as public property. It appears, to be sure, from the testimony of one of the plaintiffs, that some time prior to 1860 a roadway run over the triangle. But it appears very clearly that this roadway was not traveled as a street. One Everett testified that he had been a resident of Dubuque for about forty years, and was a surveyor and civil engineer, and had been city engineer. He says that First and Iowa streets have been traveled as they now are to their point of intersection ever since he came to Dubuque, except when the travel was prevented by high water. He further says that he does not remember seeing any part of the triangle traveled over, and that if any of it was traveled over, it must have been a small point in the corner of First and Iowa streets. The plaintiff, upon whose testimony the defendant relies, was, when he gave his testimony, forty-two and one-half years old. From the testimony of Everett we have a statement of the condition of things from a time antecedent to the plaintiff's memory. Taking the testimony of Everett and the plaintiff together the fact appears to be that while First and Iowa streets were

traveled as they now are, the travel had overspread what Everett calls a small point in the corner. Such use, we think, could not be deemed more than an accidental use by individuals as distinguished from the public.

But the defendant relies upon the testimony of one Cain as showing that the land was devoted to a public use. He testifies that wood and lumber were landed there from the river. But we cannot attach much importance to such use. Iowa street intervened between the land and the river. If wood and lumber were landed there, it must have been in high water. Everett says that he had never known this land to be considered as a part of the levee. Possibly it may have been so considered by some people, but with a street intervening it could hardly have properly been so considered. At all events the mere use of the land for landing wood and lumber in high water would not necessarily constitute a public use. There is evidence that the water sometimes rises even higher than this land.

The triangle in controversy, taken together with lot 530, made a rectangle, and that rectangle was of the same form and size as lot 529 and other lots in the neighborhood. The triangle had the appearance of a tract cut off from lot 530. First and Iowa streets were so constructed that the triangle appeared to be thrown out from public use. We infer that it was not thought to be needed for public use. What the city was interested in was the improvement of First and Iowa streets, and in having the triangle property filled. The Simplots, about 1853, took possession of it as a part of lot 530, or as a corner thrown out by the city and which might be taken and utilized in connection with lot 530. The city, it appears to us, treated the triangle as belonging to the Simplots and a part of lot 530. The defendant, it is true, denies this, and it must be conceded that the evidence when carefully examined is rather meager. But still we think it is sufficient to establish the fact. The evidence upon which the plaintiffs rely is their own testimony. Alex. Simplot says:

"The streets were run out on both sides, Iowa and First streets, and we were required to fill this triangle." * * * "We had to pay all the expenses that were put upon that locality." * * "I cannot find the bills, but I remember several times of our paying them. We paid for macadamizing Iowa street on the east side of the triangle. In early times I know that there would be a marshal or deputy around with bills for macadamizing." * * "We paid bills before Kavanaugh did his work." Charles Simplot says: "The triangle was the lowest spot in the property, and the heaviest part of the filling was there. We were ordered to fill up and were tardy, and the city did it."

Now taking this testimony together it amounts to this, that the Simplots were ordered to fill the triangle; that they neglected it; that the city filled it and compelled the Simplots to pay for it. There may, it is true, have been better evidence of the compulsion than Alex. Simplot's mere statement that they "had to pay all the expenses that were put upon that locality," but the evidence was not objected to, nor was there anything to contradict it.

The defendant claims that certain receipts put in evidence contradict it. The receipts showed payment for filling simply lot 530, but it may have been true as the witness testified, that the Simplots "had to pay all the expenses that were put upon that locality." The cost of filling the triangle may have been included in the receipts as if it was a part of lot 530.

We see nothing in the facts now shown to render the rule of law announced upon the former appeal inapplicable, and taking that to be the correct rule, as we must, the judgment must be

AFFIRMED.