Robert J. FENCL, Appellant,

v.

CITY OF HARPERS FERRY,
Iowa, Appellee.

No. 98–2284.

Supreme Court of Iowa.

Dec. 20, 2000.

Rehearing Denied Jan. 29, 2001.

Eric W. Johnson of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellant.

James A. Garrett, Waukon, for appellee.

TERNUS, Justice.

The appellant, Robert Fencl, brought this action to quiet title to a twenty-foot strip of land that was originally platted as an alley in the City of Harpers Ferry, but never used as such. The trial court held that the alley was public trust property and, therefore, Iowa's Marketable Record Title Act, Iowa Code sections 614.29–.38 (1997), did not apply to cut off the appellee city's interest. On appeal, we hold that the unused alley is not public trust property. Notwithstanding this holding, we conclude that the act does not apply to extinguish the city's interest because a statutory exception for interests appearing in the record titleholder's muniments of title applies. In considering the appellant's alternative argument, rejected by the trial court, that the city is equitably

estopped from claiming any interest in the land, we find that Fencl has established the elements of equitable estoppel and, therefore, the city is estopped from claiming ownership of the disputed property. Accordingly, we reverse and remand for entry of an order quieting title in Fencl.

I. *Background Facts and Proceedings.*

Harpers Ferry is a resort community on the shore of the Mississippi River. Its origin can be traced to an 1854 recorded plat of the town of Winfield, later renamed as Harpers Ferry. This plat, identified as "the Original Plat of Harpers Ferry," defined the boundaries of lots and designated streets and alleys. The property in dispute in this case appears on the original plat as an alley, although it has never been utilized as such.

Robert Fencl currently owns the property designated as lot 63 on the 1854 plat. The unused alley lies south of lot 63, between lot 63 and lot 64. For many years prior to 1950, both lots, as well as additional adjacent property, were under the common ownership of F.W. Goebel and his wife, Martha, and were part of a large farm. Then in 1950, the Goebels conveyed lot 63 to W.A. Ottilie. The complete description used in the warranty deed conveying the property to Ottilie is as follows:

> Lot 63 of Original Plat of the Town of Harpers Ferry, Iowa, and the part lying immediately South of that Lot which was originally platted as an alley and 15 feet immediately East of said Lot which constitutes a vacated portion of Second Street.[1]

When Ottilie died in 1951 his heirs deeded the property back to Martha Goebel, and she owned the property until 1962.

In 1962, Raymond and Betty Fencl, the parents of Robert Fencl, approached the Goebels about purchasing a lot. The Goe-

---

1. In 1918 the city vacated portions of certain streets, including fifteen feet on the west side of Second Street. This fifteen-foot strip was added to the front of Lot 63. The vacation ordinance was recorded and the attached plat showing the vacated property reveals that the land at issue in this case was still platted as an alley. Although the city's records are incomplete, those that are available do not show any subsequent vacation of the alley.

bels offered the Fencls a choice of several lots; lot 63 was priced higher than other lots because it was twenty feet wider due to the addition of the property platted as an alley. The Fencls agreed to purchase lot 63, and received a warranty deed from the Goebels. The description of the property was identical to the description appearing in the 1950 warranty deed to Ottilie.

The Fencls made various improvements to the property, including the tract originally designated as an alley. They spent considerable effort cleaning up the property and eventually moved a trailer onto that portion of the property known as lot 63. They planted grass, flowers, and trees, and, in 1969, built a tool shed on the contested property at the cost of a few hundred dollars. At one time, a septic tank system was located on the disputed tract, but in the late 1980s the Fencls stopped using it when they connected to a citywide sewer system.

In 1993 the Fencls deeded the property to their son. The property description remained as it had in prior deeds.

Around 1996, the city began a process of identifying and eliminating unneeded public rights-of-way, including platted, but never developed, streets and alleys. Property designated by the city was offered to adjoining property owners at a standard price of $.96 per square foot. One of the properties so designated was the twenty-foot strip of property between lots 63 and 64, originally platted as an alley and included in Fencl's deed. The city contacted Fencl and his neighbor to the south and offered to sell each of them one-half of the alley at the established price. Fencl objected to purchasing the property, as he believed that he already owned it. When the parties were unable to resolve the issue, Fencl filed this quiet title action.

In his petition to quiet title, Fencl asserted that he owned the contested property in fee simple and that the provisions of the Marketable Record Title Act barred any interest that the city may ever have

had in the real estate. The city responded that the act did not apply for four reasons: (1) the alley constitutes public trust property and, therefore, the city's interest could not be extinguished by the act; (2) the city's interest was inherent in the muniments of which Fencl's chain of record title was formed, thereby falling within an exception to the act; (3) the city had been in continuous possession of the property for a period of more than forty years, thereby qualifying under another exception to the act; and (4) Fencl's chain of record title failed to adequately identify the property he claimed. The city filed a counterclaim to quiet title in the city.

The case was tried to the court, which denied Fencl's petition to quiet title and granted the city's counterclaim to quiet title. The court ruled that the disputed property was public trust property and, therefore, the act did not apply. The court also rejected an equitable estoppel argument advanced by Fencl. Fencl brought this appeal.

## II. *Scope of Review.*

An action to quiet title in land is in equity and, thus, this court's review is de novo. *See Rouse v. Union Township,* 530 N.W.2d 714, 716 (Iowa 1995); Iowa R.App.P. 4. We have the responsibility to examine the facts as well as the law and to decide anew the issues properly presented. *See In re Marriage of Full,* 255 N.W.2d 153, 156 (Iowa 1977). "[T]he court gives weight to the fact findings of the trial court, but is not bound by them." Iowa R.App.P. 14(f)(7). Nor are we bound by the trial court's conclusions of law. *See Rouse,* 530 N.W.2d at 716.

We first examine the basis upon which the trial court rendered its decision, affirming on that ground if possible. *See Israel v. Farmers Mut. Ins. Ass'n,* 339 N.W.2d 143, 146 (Iowa 1983). If we disagree with the basis for the court's ruling, we may still affirm if there is an alternative ground, raised in the district court and

urged on appeal, that can support the court's decision. *See id.*

### III. *Applicability of the Marketable Record Title Act.*

■ A. *General legal principles.* We begin our consideration of this issue with a brief review of the Iowa Marketable Record Title Act, commonly known as the forty-year act. Marketable title statutes are

statutes designed to shorten the period of search required to establish title in real estate and give effect and stability to record titles by rendering them marketable and alienable—in substance to improve and render less complicated the land transfer system.

*Chicago & N.W. Ry. v. City of Osage,* 176 N.W.2d 788, 793 (Iowa 1970). The act itself states that it "shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title." Iowa Code § 614.30.

In furtherance of this goal, the Iowa legislature established a forty-year marketable record title:

Any person who has an unbroken chain of title of record to any interest in land for forty years or more, shall be deemed to have a marketable record title to such interest ... *subject only to the matters stated in section 614.32.* A person shall be deemed to have such an unbroken chain of title when the official public records disclose a conveyance or other title transaction, of record not less than forty years at the time the market-

ability is to be determined, which said conveyance or other title transaction purports to create such interest, either in:

1. The person claiming such interest, or

2. Some other person from whom, by one or more conveyances or other title transactions of record, such purported interest has become vested in the person claiming such interest; with nothing appearing of record, in either case, purporting to divest such claimant of such purported interest.

Iowa Code § 614.31 (emphasis added). The city concedes that Fencl has a forty-year unbroken chain of record title to the disputed property. Therefore, Fencl has a marketable record title. *See id.* § 614.29(1) (defining "marketable record title").

Under the statute, a marketable record title operates to extinguish any interest, "the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title ... whether legal or equitable, present or future ... whether such person is natural or corporate, or is private or governmental," subject, however, to the matters stated in section 614.32. *Id.* § 614.33. Fencl's root of title is the 1950 deed from the Goebels to Ottilie. *See id.* § 614.29(5) (defining "root of title"). Clearly, the city's interest "depends upon [an] act ... that occurred prior to the effective date of the root of title," that act being the adoption of the original 1854 plat.[2] *Id.* § 614.33. Therefore, Fencl's

---

**2.** Fencl does not challenge the city's assertion that the 1854 plat created an interest in the subject property in the city. As noted earlier, the plat designated the contested real estate as an alley. The plat was recorded. Subsequently, the city was incorporated. Although the record is not clear with respect to whether the city ever properly accepted the dedication of the streets and alleys, this possible omission is not significant because Iowa Code section 592.2 appears to make the matter of dedication and acceptance moot for plats filed

before 1897. *See* Iowa Code § 592.2 ("all plats heretofore filed for record and not subsequently vacated are hereby declared valid, notwithstanding irregularities and omissions in the required statement or plat, or in the manner or form of acknowledgement, or certificates thereof"); *see also Town of Marne v. Goeken,* 259 Iowa 1375, 1379–80, 147 N.W.2d 218, 222 (1966) (stating that silence of county records as to county's acceptance of dedication was rendered unimportant by the legalizing act in chapter 592). Under these circum-

marketable record title serves to extinguish the city's interest unless Fencl's title is subject to any of the matters stated in section 614.32.

Section 614.32 sets forth the interests and rights to which a marketable title is subject. The city relies on two of these matters: (1) interests that are inherent in the record chain of title; and (2) interests preserved by possession of the owner continuously for a period of forty years or more. *See id.* § 614.32(1)-(2). In addition, the city claims that the forty-year act simply does not apply to public trust property, a proposition adopted by the trial court. We will address each issue separately.

B. *Public trust property.* While the city concedes that the statute is generally applicable to governmental interests, it nevertheless maintains that the statute was never meant to divest a governmental entity of "public trust property." The city relies on dictum in our decision in *State v. Sorensen*, 436 N.W.2d 358 (Iowa 1989), for the proposition that the marketable record title act does not apply to public trust property.

In *Sorensen*, we considered the scope of Iowa Code section 614.17, a marketable title act known as the ten-year act, which, at that time, barred certain claims to real estate predating 1970. 436 N.W.2d at 360 (citing Iowa Code section 614.17 (1983)).[3] The State sought to quiet title to land that had been formed by accretion to the Missouri River. *Id.* at 359. The defendant, Sorensen, claimed title to the land and asserted that any interest by the State in the property was lost under the time limitation of section 614.17. *Id.* at 360. Due to the special nature of public trust property, we held that section 614.17 did not apply to bar claims of the State to such property. *Id.* at 362. Because the disputed land was public trust property, this court concluded that the State's interest was not subject to section 614.17. *Id.* at 363. We noted that Sorensen had not preserved error on his additional claim that the forty-year act extinguished the State's right to the property. *Id.* at 360. We stated, nonetheless, that "it is doubtful that the forty-year act would bar claims to public trust property, despite the act's specific inclusion of 'governmental' as well as private claims." *Id.* (citing Iowa Code § 614.33). We do not find it necessary in the case before us to decide whether the forty-year act would bar claims to public trust property because the contested alley does not qualify as public trust property, a conclusion we will now explain.

The public trust doctrine is "based on the notion that the public possesses inviolable rights to certain natural resources." *Id.* at 361. The State has very limited power to dispose of such property. In *State v. Dakota County, Nebraska*, 250 Iowa 318, 93 N.W.2d 595 (1958), this court held that land under the Missouri River was public trust property and could not be sold by the State. 250 Iowa at 325, 93 N.W.2d at 599; *accord Sorensen*, 436 N.W.2d at 362 (noting the "stringent limitations on the state's power to alienate such property").

▉ The doctrine in Iowa has a narrow scope: "We do not necessarily subscribe to broad applications of the doctrine, noted by one authority to include rural parklands, historic battlefields, or archaeological remains. In fact, we are cautioned against an overextension of the doctrine." *Sorensen*, 436 N.W.2d at 363 (citations omitted). The doctrine was "originally applied [in Iowa] to the beds of navigable waters, but has now expanded to embrace the public's use of lakes and rivers for recreational purposes as well." *Larman v.*

---

stances, the original recorded plat was "equivalent to a deed in fee simple to the town of the land set apart in the plat for streets or other public use." *Kelroy v. City of Clear Lake*, 232 Iowa 161, 164, 5 N.W.2d 12, 16 (1942).

**3.** Section 614.17 now bars certain described claims predating January 1, 1980. *See* Iowa Code § 614.17 (1999).

*State,* 552 N.W.2d 158, 161 (Iowa 1996) (citing *Robert's River Rides, Inc. v. Steamboat Dev. Corp.,* 520 N.W.2d 294, 299 (Iowa 1994); *Sorensen,* 436 N.W.2d at 363). Clearly, the alley in question is not a navigable or recreational body of water; nor does the alley provide access to a river or lake. Thus, the question becomes whether we should extend the doctrine to encompass this type of public property.[4] Such an extension, in our opinion, would be inconsistent with the rationale underlying the public trust doctrine.

The public trust doctrine is based on the notion that the State is a steward of our natural resources. *See Sorensen,* 436 N.W.2d at 361. Consistently with this basic proposition, the United States Supreme Court has prohibited a state from conveying important natural resources to private parties. *See Ill. Cent. R.R. v. Illinois,* 146 U.S. 387, 452–53, 13 S.Ct. 110, 118, 36 L.Ed. 1018, 1042–43 (1892). We think these underpinnings of the public trust doctrine have no applicability to public streets and alleys. Simply stated, an alley is not a natural resource. Unlike the unique nature of the Missouri River, an alley exists merely where the governmental entity chooses to place it. Moreover, it is clear that the government has the power, albeit subject to some limitations, to alienate property originally dedicated for streets and alleys. In fact, that is exactly what the city proposes to do in the present case. If we were to hold that the alley is public trust property subject to the public trust doctrine, the city's plan to sell the alleyway would be in jeopardy. *See Dakota County,* 250 Iowa at 325, 93 N.W.2d at 599 (holding public trust property could not be sold by the State).

In summary, we conclude that the alley is distinguishable from public trust property with respect to the uniqueness of the land as well as the limitations on its alienability. Therefore, we decline to extend the public trust doctrine to encompass the alley in question.

■ C. *Exception for interests inherent in the muniments of title.* Iowa Code section 614.32 states that a marketable record title is subject to "all interests . . . which are inherent in the muniments of which such chain of record title is formed." Iowa Code § 614.32(1). *See generally* Black's Law Dictionary 1019 (6th ed.1990) (defining "muniments of title" as "[d]ocumentary evidence of title"). This statute further provides, however, that a "general reference in such muniments . . . to . . . interests created prior to the root of title" is not sufficient; the muniments must contain a "specific identification . . . of a record title transaction which creates such . . . interest." Iowa Code § 614.32(1). To determine the applicability of section 614.32(1) in this case, we must answer three questions: (1) Is the city's interest in the disputed property inherent in the muniments of title—in this case, deeds—forming Fencl's chain of record title? (2) Was the city's interest created prior to Fencl's root of title? and (3) If so, do the deeds specifically identify the record title transaction that created the city's interest?

It is helpful at this point to again review the property descriptions contained in the deeds that form Fencl's chain of record title:

Lot 63 of *Original Plat of the Town of Harpers Ferry, Iowa,* and the part lying

---

4. Contrary to the city's contentions, we have never applied the public trust doctrine to streets and alleys. It is true that this court has stated on several occasions that streets and alleys are held in trust for the public's use. *See, e.g., City of Hawarden v. US W. Communications, Inc.,* 590 N.W.2d 504, 507–08 (Iowa 1999) (stating that where city holds its streets in fee, the fee is "in trust for the public"); *Lerch v. Short,* 192 Iowa 576, 577, 185 N.W. 129, 130 (1921) (stating that the city holds title to streets "in trust for the public"); *Milburn v. City of Cedar Rapids,* 12 Iowa 246, 251–52 (1861) (stating that town held streets "in trust" for the public). But we have never held that streets and alleys are a natural resource or "public trust property" subject to the severe restrictions on alienability inherent in the public trust doctrine.

immediately South of that Lot which was *originally platted as an alley* and 15 feet immediately East of said Lot which constitutes a vacated portion of Second Street.

(Emphasis added.) The specific reference in the deeds to that part of the property "originally platted as an alley" satisfies the requirement that the interest be inherent in the documents forming Fencl's chain of record title. This reference would alert anyone examining Fencl's record title that the city, at least at one time, had an ownership interest in that portion of the property. As for the second issue, the parties agree that the 1950 deed from the Goebels to Ottilie is Fencl's root of title. *See id.* § 614.29(5) (defining "root of title"). Because the city's interest in the alley property was created prior to 1950, the deeds must specifically identify the "record title transaction" creating the city's interest in order for that interest to be preserved. *See id.* § 614.32(1). As noted earlier, the city's record title document is the original 1854 plat for Harpers Ferry. We think this document is sufficiently identified by the deeds' reference to the "Original Plat of the Town of Harpers Ferry, Iowa." Therefore, the prerequisites of section 614.32(1) are met.

Not only do the facts before us satisfy the literal requirements of section 614.32(1), but a conclusion that the city's interest was not extinguished is also consistent with the underlying purpose of the act. The statutory exceptions to marketable record title should not be interpreted and applied in such a way as to undermine the purpose of the act, which is to simplify title transactions by shortening the period that must be searched to establish marketable title. *See Chicago & N.W. Ry.,* 176 N.W.2d at 793 (stating purpose of marketable record title acts). In the case before us, a person searching the chain of record title for the obligatory forty years would be alerted not only to the fact that the town of Harpers Ferry had platted a portion of the property as an alley, but would

also be informed of the document creating this interest, namely the original plat of the city. Under these circumstances, the title transfer process is not unduly burdened by a focused search to determine whether the city's interest in the alley had ever been vacated. Such a search was not undertaken here because Fencl did not have an abstract of title prepared until after his dispute with the city surfaced.

Based on the foregoing analysis, we hold that Fencl cannot rely on the Marketable Record Title Act to extinguish the city's interest in the disputed land. This conclusion makes it unnecessary to determine whether the exception for continuous possession found in section 614.32(2) applies. We now consider Fencl's alternative argument that the city is estopped from claiming an interest in the platted alley.

IV. *Equitable Estoppel.*

■ A. *General principles.* The doctrine of equitable estoppel is based on fair dealing and good faith. *See Sioux City v. Johnson,* 165 N.W.2d 762, 767 (Iowa 1969). The generic elements of this doctrine are

1) a false representation or concealment of material facts;

2) lack of knowledge of the true facts on the part of the actor;

3) intention that it be acted upon; and

4) reliance thereon by the party to whom made, to his prejudice and injury.

*Hendricks v. Great Plains Supply Co.,* 609 N.W.2d 486, 493 (Iowa 2000). We have said, however, that "[t]here can be no hard and fixed rule for determining when this principle should be applied." *Johnson,* 165 N.W.2d at 768. And, in fact, these elements have been largely ignored in our cases dealing with estoppel in the context of title disputes. *See, e.g., Pearson v. City of Guttenberg,* 245 N.W.2d 519, 528–31 (Iowa 1976) (quieting title in homeowners under theory of estoppel; traditional elements of equitable estoppel not discussed); *Page & Crane Lumber Co. v. City of Clear Lake,* 208 Iowa 735, 738, 225 N.W. 841, 842

(1929) (holding city "estopped from asserting title" to an alley; traditional elements of equitable estoppel not discussed); *Simplot v. City of Dubuque*, 56 Iowa 639, 640–41, 10 N.W. 221, 222 (1881) (quieting title in claimant based on estoppel theory and focusing on nonuse of property by city and conduct of both parties indicating tract was owned by claimant).

■ In the context of property disputes, we have first required proof of conduct on the part of the city indicating an abandonment of its interest. *See Pearson*, 245 N.W.2d at 529 (citing *Johnson*, 165 N.W.2d at 766–67); *Smith v. City of Osage*, 80 Iowa 84, 88–89, 45 N.W. 404, 406 (1890). This conduct is akin to the representation required under the generic formulation of the equitable estoppel doctrine.

■ The claimant is also obligated to prove a claim of ownership through adverse possession.[5] *See Pearson*, 245 N.W.2d at 529–30; *cf. Johnson*, 165 N.W.2d at 770 (noting that claimant merely seeking to enjoin city from using contested property so as to allow claimant's continued possession and use of property need not prove abandonment or adverse possession to estop city). This claim must be "in good faith premised upon conduct of the municipality that would reasonably tend to lead another to believe that its once intended use as a street is no longer contemplated." *Johnson*, 165 N.W.2d at 769.[6] Thus, this second element of estoppel as applied in title disputes is similar to the second and fourth elements of a traditional equitable estoppel claim.

■ Finally, the court must find that to allow the city to assert its ownership interest would unfairly damage the person claiming the property adversely to the city. *See id.* at 768; *State v. Raymond*, 254 Iowa 828, 836, 119 N.W.2d 135, 140 (1963). This element generally requires the claimant to show that he has made some permanent improvement on the tract. *See Schultz v. Stringer*, 168 Iowa 668, 675, 150 N.W. 1063, 1065 (1915) (holding that the doctrine of estoppel could not be applied because the claimant had not made any improvements to the disputed alley). The injury and prejudice requirement of the fourth element of the traditional equitable estoppel doctrine is comparable to this final element of an estoppel claim to quiet title.

■ Proof of estoppel must be by clear and convincing evidence. *See Ivener v. Cowan*, 175 N.W.2d 121, 124 (Iowa 1970). We will now consider the evidence on each component of Fencl's equitable estoppel theory to determine whether it clearly and convincingly supports his claim.

■ B. *Conduct showing abandonment.* A threshold requirement for this element is proof that the city has not used the property for more than ten years. *See Johnson*, 165 N.W.2d at 768; *Kelroy v. City of Clear Lake*, 232 Iowa 161, 168, 5 N.W.2d 12, 17 (1942). Mere nonuse is not enough, however; nonuse must be "coupled with affirmative evidence of a clear determination to abandon." *Allamakee County v. Collins Trust*, 599 N.W.2d 448, 452 (Iowa 1999); *accord Johnson*, 165 N.W.2d at 768 ("mere nonuser alone is not sufficient"); *Kelroy*, 232 Iowa at 168, 5 N.W.2d at 17 ("mere non-user will not of itself defeat the public title to a street").

■ The trial court found that Fencl had not established nonuse by the city because an electric utility, operating under

---

**5.** It has long been the rule in Iowa that the doctrine of adverse possession does not apply to governmental entities. *See Johnson v. City of Shenandoah*, 153 Iowa 493, 500, 133 N.W. 761, 762 (1911). As we discuss, it has, however, been incorporated as an element in an equitable estoppel action to establish title. *See Pearson*, 245 N.W.2d at 529–30.

**6.** Although *Johnson* was a suit to enjoin the city's possession and use of the street, the factors used in *Johnson* were adopted as part of the court's analysis in the quiet title suit addressed in *Pearson*. *See Pearson*, 245 N.W.2d at 528, 531.

a city franchise, had placed poles on the disputed tract and Fencl's neighbor placed his LP gas tank on the property. Upon our de novo review, we disagree with this finding. We first note that the use of the property by Fencl's neighbor is irrelevant to a determination of whether the *city* used the property at issue. *See Simplot,* 56 Iowa at 641, 10 N.W. at 222 (stating that use of disputed tract, which was located on the river, by individuals for landing lumber in high water did not constitute a *public* use of the property). A similar conclusion is appropriate in considering the utility's placement of poles on the property. The mere fact that the utility operated under a city-granted franchise does not make *its* use of the property the *city's* use of the property. No doubt the city would vigorously contest such an assertion if Fencl's case were one claiming injury from a falling pole, rather than one seeking to quiet title. Having rejected the validity of the city's claimed "vicarious" use of the property, we have examined the record for other evidence of use and have found none. Therefore, Fencl has shown nonuse for more than ten years.

We also think Fencl has shown other acts evidencing an abandonment. In 1988, in the process of constructing a citywide sewer system that would include service to Fencl's property, the city requested and obtained a temporary construction easement from Fencl. *See Pearson,* 245 N.W.2d at 530–31 (finding that city's conduct in requesting from plaintiffs a "temporary easement for right to work and storage area" with respect to contested property was "consistent with the plaintiffs' claim of private ownership"). In addition, the document granting the easement, which was prepared by the city, identified the property owned by Fencl using the same description found in the recorded deeds; this description, of course, included the platted alley. Furthermore, this document described the easement as

Ten Feet in width adjacent and parallel to the northwesterly line of Lot 63 AND ten feet in width adjacent and parallel to the northwesterly line of the *vacated* 20 foot alley of the Original Plat of Harpers Ferry, Allamakee County, Iowa.

(Emphasis added.) It is apparent from the document prepared by the city for Fencl's signature that the city believed it had vacated the alley.

In addition to this conduct is the fact that the city collected property taxes on the contested tract from approximately 1975 to 1992. In a prior case involving similar facts, this court stated:

[The city] has permitted plaintiff, and those under whom he claims, to occupy the land, which has never been subject to public use, and it levies and collects city taxes thereon. The law regards this as a declaration by its acts that it holds no claim to the land, and as an abandonment of all claim to the public use of the lands.... The city will be estopped to set up any claim to land to which the right of public use has been abandoned by subjecting it to taxation as private property.

*Smith,* 80 Iowa at 88–89, 45 N.W. at 406.

Based on the city's nonuse of the contested property, its action in seeking an easement from Fencl to permit construction in the vicinity of the alley, which it described as "vacated," and its taxation of the property, we find that the plaintiff has established abandonment sufficient to support a claim of equitable estoppel.

 C. *Adverse possession.* This element has been variously defined in our cases, but in essence one claiming an interest in land adverse to a municipality under a theory of estoppel must prove his "actual and notorious possession of the land ... as private property under a claim of right." *Kelroy,* 232 Iowa at 168, 5 N.W.2d at 17; *accord Page & Crane Lumber,* 208 Iowa at 738, 225 N.W. at 842 (holding that estoppel can arise "where, with the knowledge of the city, an occupant has asserted a right

to the ground where the alley is located, and has maintained such possession under such claim, with the knowledge of the city, for more than ten years"). The possession must be such " 'as ordinarily marks the conduct of owners in general in holding, managing, and caring for property of like nature and condition.' " *Pearson*, 245 N.W.2d at 530 (quoting *Council Bluffs Sav. Bank v. Simmons*, 243 N.W.2d 634, 637 (Iowa 1976)). In addition, the required possession must be for more than ten years, and the party asserting the estoppel must act in good faith. *See Johnson*, 165 N.W.2d at 768–69. Finally, possession need not be under color of title; the requisite possession under a claim of right will suffice. *See Pearson*, 245 N.W.2d at 530; *Christopherson v. Inc. Town of Forest City*, 178 Iowa 893, 900, 160 N.W. 691, 693 (1916).

The trial court found that Fencl had "clearly established" his "possession under a claim of right for a long period in good faith." We agree. Fencl's parents obtained title to the property in a bona fide business transaction and recorded the deed evidencing the transfer of the land. Fencl and his parents before him have occupied the land since 1962, more than three times the required ten years. Moreover, their possession has been actual and notorious and of the character that normally accompanies ownership of property. The Fencls cleared the land. They planted it with grass, trees, and flowers. They built a tool shed upon it and installed a septic system below the ground. They also paid real estate taxes on the property. *See Pearson*, 245 N.W.2d at 530 (finding sufficient possession where claimants planted hedges and shrubbery, and claimants' fences and buildings encroached onto the disputed tract); *see also Johnson v. City of Shenandoah*, 153 Iowa 493, 502, 133 N.W. 761, 764 (1911) (stating court has "always held that the erection of buildings or the making of other permanent improvements will be sufficient for an estoppel *in pais*" and finding an estoppel where claimant had erected a buggy shed on the

purported alley). Although the city cites to the fact that Fencl's neighbor placed an LP gas tank on the contested tract, we do not think Fencl's leniency in accommodating his neighbor destroys his open possession of the property as an owner under claim of title. *See Clinton Nat'l Bank v. City of Camanche*, 251 N.W.2d 248, 250, 251 (Iowa 1977) (finding adequate possession of disputed shoreline property under a claim of right even though "a 'few stragglers' have fished from the bank and children occasionally played along the river").

■ D. *Damage to Fencl.* We here consider whether Fencl will be unjustly injured by recognition of the city's ownership of the platted alley. Contrary to the trial court's finding that Fencl had "failed to show any great damage to him," we think that a failure to estop the city from claiming title to the property will damage Fencl to an extent that, under the circumstances of this case, equity demands an estoppel. Fencl will either have to move the shed—a permanent improvement— from the tract, or he will have to pay for the property. *Cf. Clinton Nat'l Bank*, 251 N.W.2d at 251 (holding that claimants would suffer damage by use of disputed property as a city park because claimants had constructed a retaining wall on the contested real estate and had used the land as part of their front yard). The fact that large monetary sums are not involved does not detract from the significance of this injury to Fencl.

■ In summary, the city has not used this property for more than one hundred years. In documents prepared on its behalf the claimed alley was described as vacated. Furthermore, the city collected property taxes on the contested tract for approximately seventeen years. In contrast, Fencl possessed the property and treated it as his own. He made permanent improvements to the land and paid taxes on it. We think these facts establish by clear and convincing evidence the essential elements of Fencl's claim of equita-

ble estoppel. Accordingly, we reverse the trial court's contrary conclusion and remand for entry of a judgment quieting title to the disputed property in Fencl.

**REVERSED AND REMANDED.**