# IN THE COURT OF APPEALS OF IOWA

No. 23-2010
Filed May 7, 2025


**MICHAEL MULHERN and BONNIE MULHERN as co-executors of the CECELIA J. SCHIMMEL ESTATE,**
   Plaintiffs-Appellants,

**vs.**

**DONALD KRUGER (Deceased), KERRY KRUGER, PATRICIA KRUGER, KELSEY AHRENS, KRAIG DRUGER, DONALD KRUGER, KENT KRUGER, JOAN KRUGER, KIMBERLY CAPRON, MICHELLE CERWINSKE, AMY HEIMKAMP, DAVID KRUGER, VERLYN KRUGER, KANDI KRUGER, RICHARD KRUGER, PAUL KRUGER, SUSAN KRUGER, GARY KRUGER, DAROL KRUGER, LAWRENCE DEGENER, LARRY DEGENER, TUTH ANN KRUGER DUNLAP, RICHARD DUNLAP, JEFFREY DUNLAP, JULIE HELTBRIDEL, JILL IVERSON, VALPARAISO UNIVERSITY, LUTHERAN HOUR OF SAINT LOUIS, HOME FOR AGED LUTHERANS n/k/a THE LUTHERAN HOME, INC., BETHESDA LUTHERAN HOME OF WATERTOWN WI, ST. JOHNS LUTHERAN CHURCH OF PORTAGE WI, INC., n/k/a ST. JOHN'S EVANGELICAL LUTHERAN CHURCH, AND THEIR UNKNOWN SPOUSES AND THEIR UNKNOWN HEIRS AND ASSIGNS, PARTIES IN POSSESSION AND ANY AND ALL CLAIMANTS IN THE FOLLOWING DESCRIBED REAL ESTATE:THE NORTH 1/2 OF THE SE 1/4 AND THE SW 1/4 OF THE SW 1/4 AND THE NW 1/4 OF THE SE 1/4 OF SECTION 25, AND THE SE 1/4 OF THE SE 1/4 OF SECTION 26, TOWNSHIP 95 NORTH, RANGE 14 WEST OF THE 5th P.M. IN CHICKASAW COUNTY, IOWA.**
   Defendants-Appellees.

_____


   Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl (unjust-enrichment counterclaims) and John J. Sullivan (quiet-title action), Judges.

   Plaintiffs appeal the district court's grants of summary judgment dismissing their quiet-title action and granting relief on defendants' unjust-enrichment counterclaims. **AFFIRMED.**

Nathaniel W. Schwickerath of Schwickerath, P.C., New Hampton, for appellants.

Kevin J. Kennedy (until withdrawal), New Hampton, and Patrick B. Dillon of Dillon Law PC, Sumner, for appellees Kruger Descendants.

Trevor J. Hurd and Christopher F. O'Donohoe of Elwood O'Donohoe Braun & White, LLP, New Hampton, for appellee Valparaiso University.

Tara Holterhaus and Joshua Dickinson of Spencer Fane LLP, Omaha, Nebraska, for appellee Lutheran Hour of St. Louis.

Joseph B. Wallace of Hastings & Gartin Law Group, LLP, Ames, for appellee The Lutheran Home Inc.

Considered without oral argument by Schumacher, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

Cecelia Schimmel inherited a life estate in Iowa farmland. But when the clerk of court certified the change of title to the county auditor at the end of the probate proceeding on the will, the clerk did not note that Schimmel had received only a life estate. So when Schimmel died more than forty years later, her estate filed this suit seeking to quiet title against the remainder beneficiaries, arguing that the estate now has "absolute title in fee simple."

The estate relies on Iowa's marketable-record-title statute. With nuances not yet relevant, that statute essentially says that a claimed landowner who can show an unbroken chain of title supporting her interest in the land going back to "a conveyance or other title transaction" at least forty years old holds the land free and clear of all other interests that predate that at-least-forty-year-old conveyance or title transaction. Iowa Code § 614.31 (2022). The estate contends that the clerk of court's certificate of change of title was such a conveyance or title transaction that gave Schimmel absolute title to the land because it did not identify that her interest was only for life or that the remainder beneficiaries had any interest at all.

But like the district court, we disagree. The clerk's certificate is not "a conveyance or other title transaction" under the statute. The will—which clearly devised only a life estate—is the conveyance or title transaction. So the district court properly granted summary judgment to the remainder beneficiaries on the quiet-title claim. And because the estate did not preserve its challenges to the court's method of apportioning the rents between the estate and the remainder beneficiaries for the year Schimmel died, we cannot consider the merits of that ruling on the beneficiaries' unjust-enrichment counterclaim. We thus affirm.

## I.    Background Facts and Proceedings

This is a dispute over two hundred acres of farmland in Chickasaw County. The land was originally owned by Marie Kruger. In her will, Kruger gave the land to her "niece, Cecelia Schimmel, for her lifetime, and thereafter to her issue, if any, in fee, by right of representation." So Schimmel would receive a life estate—mainly entitling her to income from the farmland. And if Schimmel had any children, grandchildren, or other descendants ("issue," in probate speak), they would receive full title to the land after Schimmel's death. But if Schimmel died without any issue, the will named ten beneficiaries that would receive different proportions of the farmland "on the death of the survivor of" Schimmel or Schimmel's father.[1]

Kruger died in July 1971 in her home state of Wisconsin. Her will was admitted into probate in Wisconsin, and Schimmel petitioned to open an ancillary probate proceeding in Iowa court because of the farmland. In September, the Iowa court admitted the will and appointed Schimmel as executor. And about a year later, Schimmel filed a final report accurately describing the will's disposition of the farmland and identifying all the beneficiaries, including the ten with remainder interests in the land.[2] The court approved the final report and closed the estate. But for unknown reasons, it did not do so until eight years later—in October 1980.

---

[1] The will also provided that if Schimmel died without any issue while her father was still alive, the father would then receive the income for his lifetime.

[2] The final report also said that all taxes had been paid "except for properly deferred inheritance taxes." Schimmel paid a portion of the Iowa inheritance tax owed on the farmland. And the remainder beneficiaries elected to defer their payment of their inheritance taxes "until the termination of the life estate," with the deferred tax secured by a tax lien on the farmland.

The same day as the court order closing the estate, the clerk of court issued a "Report of Change of Title, made by Decree of Court or by Will."[3]  The report was captioned in the probate proceeding and addressed "to the County Auditor of Chickasaw County."  It certified that "title to the real estate hereinafter described," (the farmland) "has been changed and established in Cecelia J. Schmimmel [sic]."  It also stated that "[t]he change of title to the above described real estate was made as follows: Will; Order Approving Final Report dated Oct. 13, 1980, signed by Judge Joseph C. Keefe."  Two days later, the county auditor entered the change in the county's transfer book and stamped the clerk's certificate with a notation: "entered for taxation."  Neither the clerk's certification of change of title nor the entries in the auditor's transfer book noted that Schimmel received only a life estate under the will.

More than forty years passed.  Schimmel paid property taxes on the property.  She leased the land for farming—since 1977, she had the same tenant, who also lived in a farmhouse on the land.  And in August 2021, Schimmel died.  Her father was not still alive.  So under Kruger's will, the farmland passed to the remainder beneficiaries.  The tenant kept farming the land, harvesting the crops that were growing when Schimmel died and planting new crops in 2022 and 2023.  The tenant also paid the estate the share of crops due as rent under his lease with Schimmel in 2021 and 2022.

In July 2022, the estate sued the remainder beneficiaries under Kruger's will to quiet title to the farmland.  The estate alleged that at her death, Schimmel

---

[3] In quoting from the clerk's certificate, we have omitted some capitalization of entire words for readability.

was "the absolute owner in fee simple" of the farmland. The estate also alleged the farmland "was delivered . . . by way of a Certificate of Change of Title dated October 13, 1980" and that the certificate was "a muniment of title establishing title in Cecelia Schimmel in Fee Simple" and that it "changed and established title to" the farmland "in Cecelia J. Schimmel only." And so, she claimed that any interests which the remainder beneficiaries "may have to" the farmland "are barred by the Iowa Marketable Title Statute, Iowa Code Section 614.31."

The remainder beneficiaries answered the quiet-title action by denying that Schimmel had an absolute title to the farmland because she only received a life estate from Kruger's will. They also counterclaimed against the estate for the rents that it had been receiving since Schimmel's death.[4] And before long, they moved for summary judgment on the estate's quiet-title action.

The district court granted summary judgment and dismissed the quiet-title action. The court held that Kruger's will—and not the "Clerk of Court's erroneous Report of Change of Title"—was the relevant "title transaction" under Iowa's marketable-record-title statute. It reasoned the clerk's report "was simply a document generated by the Clerk giving notice that title to Marie Kruger's property was established by will" rather than "a document that transfers ownership of real estate." And it concluded that the record was undisputed that the will gave Schimmel only a life estate.[5]

---

[4] Some pleadings also reference a third-party claim against the executors individually for the rents. But that claim appears to have been abandoned.

[5] The estate unsuccessfully tried to seek interlocutory appeal of this first summary-judgment ruling. *See Mulhern v. Kruger*, No. 23-1265 (Iowa Sept. 11, 2023).

The remainder beneficiaries then moved for summary judgment on their counterclaim against the estate for payment of the rents since Schimmel's death. They argued that they were entitled to collect all rents that accrued after Schimmel's life estate terminated in August 2021, including the rents paid to the estate in 2021, 2022, and 2023. Because the estate had collected those rents, they argued that the estate was unjustly enriched and they were entitled as a matter of law to restitution. Curiously, although the remainder beneficiaries submitted a statement of undisputed facts asserting the amount of rent paid to the estate, they did not file any affidavits or other evidence supporting those facts nor cite to any record evidence in their statement or briefing.

The estate resisted summary judgment. First, it continued to argue that the court had erred in holding that Schimmel had only a life estate and thus contended that if she (and the estate) had absolute title, the estate was justified in continuing to collect all the rents. Second, it alternatively argued that even if Schimmel's life estate terminated when she died, the estate was entitled to the portion of the 2021 rents that had accrued by her August 2021 death. *See* Iowa Code § 562.1 ("The executor of a tenant for life who leases real estate so held, and dies on or before the day on which the rent is payable . . . may recover the proportion of rent which had accrued at the time of the death of such life tenant."). And the estate argued that the apportionment could not be decided on summary judgment because there was a material fact dispute. To support that fact dispute, the estate submitted much evidence, including an affidavit and deposition testimony of the tenants, which described the maturity of the crops at Schimmel's death, the rents paid to the estate, and the expenses paid by Schimmel and the estate. The estate did not

argue for a specific apportionment of the 2021 rents or even a specific method of apportioning the rents. Rather, it merely asserted "[m]any facts can be relevant to the apportionment such as the level of maturity of the crops," the "time that has passed since the previous delivery of crops for the prior year, and the amount invested by [Schimmel] prior to her death in the standing crops as well as the amounts expended by her estate in order to produce the crop which is the crop share rent."

The day after the summary-judgment hearing, for which we have no transcript in the record, the district court granted summary judgment for the remainder beneficiaries. The court refused to reconsider its quiet-title ruling, reasoning it was "the law of the case." But the court agreed with the estate that under Iowa Code section 562.1, the 2021 rents should be apportioned between the parties. Accepting the evidence submitted by the estate as the undisputed facts,[6] the court reasoned that the record showed that the crops were 60% mature. And it concluded that the 2021 rents should be apportioned between the estate and the remainder beneficiaries based on this proportion of maturity. So it held that the remainder beneficiaries were entitled to $28,295.74 of the 2021 rents and all the rents for 2022 and 2023. The court thus ordered the estate to pay the remainder beneficiaries $77,284.01 and to deliver their share of the 2023 crop to a facility designated by them.

The estate did not seek to modify the ruling under Iowa Rule of Civil Procedure 1.904. Instead it appeals, challenging both summary-judgment rulings.

---

[6] The court noted that its "dollar amounts" came from the tenant's accounting "which has been accepted by all parties."

## II.     Title to the Farmland

We review a district court's summary-judgment ruling on a quiet-title action for correction of errors at law.  *See Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 886 (Iowa 1981).  The district court must grant summary judgment when the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).  Here, the district court granted summary judgment and dismissed the estate's quiet-title action because the estate's claim that Iowa's marketable-record-title statute extinguishes the remainder beneficiaries' interests in the farmland fails as a matter of law.

Our marketable-record-title statute, *see* Iowa Code §§ 614.29–614.38—"commonly known as the forty-year act"—is one of several Iowa marketable-title statutes that are "designed to shorten the period of search required to establish title in real estate and give effect and stability to record titles by rendering them marketable and alienable."  *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 812 (Iowa 2000) (cleaned up); *see also Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 53–54 (Iowa 2024) (discussing title-clearing statutes, including the marketable-record-title statute).  Under the forty-year act, a person is "deemed to have a marketable record title" to an interest in land "when the official public records disclose a conveyance or other title transaction" that "purports to create" that interest in land—either directly for the person claiming the interest or in an unbroken chain of title to the person—that is "of record not less than forty years at the time the marketability is to be determined."  Iowa Code § 614.31.  And having that marketable record title generally "extinguish[es]" all "interests and claims" in

the land that were existing before the recording of that at-least-forty-year-old "conveyance or other title transaction."[7]  Iowa Code § 614.29(1), (5); *see also id.* § 614.33.

As the district court correctly recognized, the estate's claim that the forty-year act extinguishes the remainder beneficiaries' interests in the farmland rests on the estate having "marketable record title."  And that question turns on whether the clerk of court's certificate of change of title was "a conveyance or other title transaction" that "purports to create" a fee simple interest in the farmland for Schimmel, as the estate claims.  *Id.* § 614.31.  We thus focus on that statutory text.

A conveyance is a "voluntary transfer of a right or of property."  *Conveyance*, Black's Law Dictionary (12th ed. 2024).  And the statute defines "title transaction" as

> any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or deed by trustee, referee, guardian, executor, administrator, master in chancery, sheriff, or any other form of deed or decree of any court, as well as warranty deed, quitclaim deed, mortgage, or transfer or conveyance of any kind.

Iowa Code § 614.29(6).  Like the term "conveyance," each of these "title transactions" itself transfers title to an interest in land.  This understanding of the meaning of "conveyance or other title transaction" is reinforced by the surrounding text of section 614.31, which specifies that the "conveyance or other title transaction" must be one that "purports to *create*" the claimed interest in land.  *Id.* § 614.31 (emphasis added).

---

[7] The statute provides some exceptions to the interests that are extinguished.  *See* Iowa Code §§ 614.32, 614.34–614.36.  But given our holding that the clerk's certificate is not a conveyance or other title transaction, we do not consider whether any exception could apply here

The clerk's certificate falls outside this definition of a conveyance or title transaction. It did not transfer any property right to Schimmel. And it did not purport to create any interest in the farmland for Schimmel.

For starters, the face of the certificate states it is merely certifying a past transaction—that "title . . . has been changed and established" and that "[t]he change of title . . . was made"—not that the certificate itself was changing title or creating Schimmel's interest in the farmland. It specified how that past change was made—by "Will." And it noted the date and issuing judge of the order approving the final report on the will—all under a caption for the probate proceeding in which the will was filed.

The statutes governing the clerk's certificate in 1980 likewise show that it could not itself transfer title—it is merely a certification to keep the county auditor's records updated after the title has already been changed by a will. The key statute provides that "where title to real estate *is changed by . . . will . . .* in probate, the clerk of the district court shall certify the same . . . to the county auditor of the county in which said land is located." Iowa Code § 606.14 (1979) (emphasis added); *see also id.* § 633.480 (requiring clerk to issue a certificate for "each parcel of real estate described in the final report . . . which has not been sold" "[a]fter the entry of the order approving the final report"). Similar language is used in the statute imposing the duty on the auditor to enter the certificate "upon the transfer books" on "receipt of a certificate from the clerk of the district court . . . that the title to real estate *has been finally established* in any named person . . . *by will.*" *Id.* § 558.66 (emphasis added). Note the past tense and the express text that it is the *will* that changed or established the title in both statutes.

The county auditor's "transfer books"—where the certificate is entered—are distinct from the county recorder's records and index books and appear to be used mainly for tax and other notification purposes. *See, e.g.*, *id.* § 558.57 (requiring endorsement by auditor on "any deed or other instrument unconditionally conveying real estate" that it has been "[e]ntered upon transfer books and for taxation" before it can be recorded by the recorder); *id.* § 306.29 (requiring notice to landowners shown in the transfer books for right-of-way condemnation); *id.* § 384.37(25) (using the owners as shown in the transfer books for statute governing city special assessments); *id.* § 455.20 (requiring notice to landowners shown in the transfer books for certain drainage district actions); *see also id.* § 633.480 (in its title, describing the clerk's certificate as a "[c]ertificate to county auditor for tax purposes"). This makes sense for a record that—while important administratively—is merely certifying a prior transfer of property rights rather than transferring or creating those rights itself.[8]

What's more, recognizing that it is the will—not the clerk's certificate—that transfers title tracks with longstanding Iowa law that a valid will itself "operates as a transfer of title" upon its "maker's death." *In re Est. of Lundgren*, 98 N.W.2d 839, 841 (Iowa 1959); *see also* Iowa Code § 633.350 (1979) (providing with certain exceptions that "when a person dies, the title to his property, real and personal, passes to the person to whom it is devised by his last will"); *In re Est. of Duffy*, 292

---

[8] We have looked to the statutes governing the clerk's certificate that were in effect at the time this clerk's certificate was issued. But the current statutes similarly support our holding that the clerk's certificate does not transfer title itself. *See, e.g.*, Iowa Code §§ 558.66(3)(a), 602.8102(10), 633.480 (2025). In fact, the current version of Iowa Code section 558.66 expressly states that the clerk's certificate "is not a muniment of title." *Id.* § 558.66(4).

N.W. 165, 176 (Iowa 1940) (explaining the role of probate in determining whether title transfers by will or to heirs at law—either of which is considered effective "immediately upon the death of the ancestor"). Indeed, this longstanding principle is even reflected in the marketable-record-title statute, which includes "title by will" in its definition of the "title transaction." Iowa Code § 614.29(6) (2022).

Bottom line, because the clerk's certificate is not "a conveyance or other title transaction" under the marketable-record-title statute, the estate does not have marketable record title that extinguishes the remainder beneficiaries' interest in the farmland. And the district court thus properly granted summary judgment to the remainder beneficiaries and dismissed the estate's quiet-title claim.

### III.     Rents from the Farmland after Termination of the Life Estate

The estate next challenges the summary-judgment ruling on the unjust-enrichment counterclaim, arguing that the district court erred in its method of apportioning the 2021 rents between the estate and the remainder beneficiaries under Iowa Code section 562.1.[9] Specifically, the estate argues that the court erred by apportioning "on the basis of time" rather than on crop maturity level and by not deducting the expenses Schimmel paid for crop inputs and then apportioning only the net rents between the parties. But we cannot consider those claims of error because they are not preserved for our review.

"Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v.*

---

[9] The estate also argued that if we reverse the quiet-title ruling we would need to reverse the unjust-enrichment ruling too because the estate would be entitled to all rents. But that argument fails because we are affirming the quiet-title ruling.

*Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). This error-preservation requirement gives the district court an opportunity to address the error itself "at a time when corrective action can be taken," thus conserving judicial and party resources. *In re Marriage of Heiar*, 954 N.W.2d 464, 470 (Iowa Ct. App. 2020) (cleaned up). And it ensures that we are acting as a court of appeals, reviewing a decision already made by the district court after adversarial testing, rather than considering it for the first time on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Because the error-preservation requirement protects more "than simply the interests of the opposing party," we address whether error is preserved on our own even when the opposing party does not raise it. *Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000).

The estate did not raise the errors it now asserts on appeal when it had the chance to do so in the district court. There, it only argued that a fact dispute existed preventing summary judgment—and it has abandoned that argument on appeal. The estate never filed its own cross-motion for summary judgment. It never argued for any specific method of apportioning the rents nor for any specific amounts to be apportioned. And once the court issued its ruling—alerting the estate that the court disagreed with its only argument and reached the merits—it still did not bring its claims of error in the court's method of apportionment to the court's attention by filing a 1.904 motion. Because the estate makes no preserved arguments for our review, we affirm the district court's grant of summary judgment on the unjust-enrichment counterclaim.

**AFFIRMED.**