Thomas Joseph STECKLEIN and Mary Beth Stecklein, Appellees,

v.

CITY OF CASCADE, Appellant.

No. 03–0904.

Supreme Court of Iowa.

March 4, 2005.

Michael J. Coyle and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellant.

Joseph J. Bitter of Bitter Law Offices, Dubuque, for appellees.

TERNUS, Justice.

The City of Cascade appeals from a district court judgment quieting title to certain platted, but unopened, streets in the appellees, Thomas and Mary Beth Stecklein. The district court ruled the city had an easement to use and maintain roads through the Steckleins' property but lost that right by the Steckleins' adverse possession and through the operation of Iowa's forty-year marketable title statute, Iowa Code section 614.31 (2001). Upon our review of the record and the governing legal principles, we conclude the city holds fee title to the disputed land. Therefore, we reverse the district court's judgment quieting title in the Steckleins, and remand for entry of judgment in favor of the city.

I. *Scope of Review.*

Our review of the court's ruling in this quiet title action is de novo. *Fencl v. City of Harpers Ferry,* 620 N.W.2d 808, 811 (Iowa 2000). Accordingly, we will examine the facts and the law to decide anew the issues properly presented. *Id.* Although we give weight to the trial court's fact findings, neither the court's findings of fact nor its conclusions of law are binding. *Id.*

II. *Factual Background.*

In 1857, a county judge accepted for recording a plat of land containing the disputed streets, titled "Second Union Addition to the Village of East Cascade, Du-

buque County, Iowa." At that time, unincorporated, platted real estate was known as a village. *See* Iowa Code §§ 632, 649 (1851). Although the Village of East Cascade was never incorporated, the City of Cascade was incorporated on December 31, 1880, and its boundaries included the Second Union Addition. At that time the Second Union Addition was located in the southeastern corner of the city limits and, although platted as blocks, lots, and streets, was used for farming.

There is no record of a formal ordinance or resolution of the city accepting the streets designated in the Second Union Addition. Nonetheless, in 1905 the city passed an ordinance establishing the grades of certain streets, including two of the streets found in the Second Union Addition. In the 1930s or early 1940s a house (now owned and occupied by the Steckleins) was built on block 34 of the Second Union Addition; it did not encroach on any of the platted streets. At some point in time an access road to the house developed on a platted, but unopened street designated as South Street.

In 1966 the city adopted an ordinance changing the names of certain streets within the Second Union Addition, including changing South Street to Sixth Avenue. In addition, for a number of years, the exact dates unknown, the city utility owned a gas main located in Sixth Avenue S.E. in the Second Union Addition. In 1988 the city vacated a portion of Washington Street within the Second Union Addition. The city council allowed the abutting property owners to purchase the property, but retained a utility easement over a portion of the vacated land.

In June 1990 the Steckleins purchased the following described real estate, located in Cascade, Iowa, from Catherine Schmidt:

Lots 5, 6, 7, 8, of Block 33; Block 34; Block 35; Block 40; Block 41; Block 42; Block 43; in the Second Union Addition to the Village of East Cascade, Dubuque County, Iowa. All in the City of East Cascade, Iowa, according to the recorded plat thereof subject to easements of record.

This description, contained in the Steckleins' warranty deed, did not include the platted streets. At the time the Steckleins purchased this property it was enclosed by a thirty to forty-year-old fence. In addition, there were some very old internal fences on the property, some of which crossed the platted streets. There was no visible use of any of the platted streets within the perimeter fence, other than the gravel road leading to the house.

In 1993, the city paved Adams Street, which abuts the Steckleins' property on the west. The city also installed radii curbs on the east side of Adams Street at Sixth Avenue S.E. and Seventh Avenue S.E. in anticipation of these proposed perpendicular streets intersecting Adams at some time in the future. In addition, the city required the developer of a subdivision to the south and east of Second Union Addition to install a sewer adequate to handle future development on Sixth, Seventh, Eighth, and Washington, which are streets running through the Second Union Addition.

In 1994, the Steckleins obtained an appraisal of their property. The appraisal stated it was for the purpose of establishing a fair market value "for the property as a whole," but included a market analysis for eight lots in blocks 34 and 41 platted for residential purposes. This appraisal referenced "future proposed streets" in its discussion of the value and suitability of these lots for development purposes. The appraisal noted the lots were too small by today's standard, and their value was also negatively affected by the fact "the proposed streets will have to be paid for by

the developer with no help from city funds." In 1998, upon the advice of their attorney, the Steckleins obtained a quit claim deed from Catherine Schmidt of all her rights in "the unused and abutting streets" relating to the lots designated in the Second Union Addition.

On August 13, 2001, the issue of opening and improving Sixth Avenue S.E. came before the city council. On August 15, 2001, the Steckleins filed an affidavit of possession, claiming record title to all of the blocks and lots contained in their warranty deed from Schmidt and "that part of the unused and fenced in abutting streets, all according to the recorded plats thereof."

It is undisputed the Steckleins have never paid taxes on the streets. Although the Steckleins planted trees on the property when they removed the old perimeter fence, they did not plant trees along the line where proposed Sixth and Seventh Avenues would intersect Adams Street. The Steckleins graded the gravel access road at some point in time, but the city has otherwise maintained the road, putting down gravel and removing snow. Originally garbage and recycling materials were picked up in front of the Steckleins' house on the Sixth Avenue access road, but after the city's notice of intent to improve Sixth Avenue, the Steckleins began placing their garbage and recycling items at the intersection of Adams and Sixth Avenue. No buildings or structures have been erected in any of the proposed streets.

### III. *Prior Proceedings.*

On March 25, 2002, the Steckleins filed an action in equity to quiet title to the platted, but unopened, streets in the Second Union Addition and to prevent the city from entering thereon. In its answer, the city denied the Steckleins owned the disputed land. The matter was tried to the court, which issued a ruling in favor of the plaintiffs. The district court determined the city had only an easement in the streets, which it lost through its failure to exercise its rights for over 120 years. The court reasoned that the city's failure to open the streets, coupled with the continuous farming of the land and the enclosure of the disputed property with fences, supported a finding of abandonment and adverse possession sufficient to extinguish the city's right to the platted streets. The court also found merit in the plaintiffs' argument that the city was divested of its easement by Iowa Code section 614.31 because the city had failed to take any action or file any documentation of its interest in the land for over forty years. The district court rejected the plaintiffs' assertion the city was equitably estopped from asserting its rights in the disputed property. Based on its finding of adverse possession and the effect of section 614.31, the court quieted title to the disputed property in the Steckleins.

After the trial court denied the city's post-trial motions, the city filed this appeal. It claims the court erred in three particulars: (1) in holding the city had only an easement in the streets and not fee title; (2) in holding the plaintiffs acquired title by adverse possession; and (3) in holding the marketable title statute divested the city of its interest in the property.

### IV. *Nature of City's Interest in Land.*

 We begin our consideration of this appeal with an analysis of the city's claimed interest in the disputed streets. The city contends it holds title in fee to the platted streets, whereas the plaintiffs assert the city held a mere easement. To determine the nature of the city's interest, it is necessary to examine the statutes in effect at the time the plat at issue was recorded in 1857.

Chapter 41 of the 1851 Iowa Code set out the requirements for a proprietor of land to lay out a village plat and make a dedication of land for public use. *See* Iowa Code §§ 632–635 (1851). Because there is no dispute that the Second Union Addition plat conformed to the statutory requirements, we turn our attention to the provisions governing recording and dedication of the plat:

> Sec. 636. **Recorded.** The plat and acknowledgement shall then be presented to the county judge, who if satisfied that the above requirements have been fully complied with shall enter thereon an order that the whole be recorded.

> Sec. 637. **Dedication to public.** The acknowledgement and recording of such plat is equivalent to a deed in fee simple of such portion of the land as is therein set apart for public use. . . .

Iowa Code §§ 636–637 (1851). The record clearly establishes a county judge ordered that the plat be recorded. Although section 637 provided that the court's action was equivalent to a deed in fee simple, the City of Cascade did not exist in 1857. The plaintiffs argue the public obtained a mere easement when the plat was recorded, and the city succeeded to this interest when it later incorporated.

■ This court has said that the filing of a plat dedicating a road in a *village* conveys to the general public, prior to acceptance by an incorporated town, a mere easement to use the dedicated tract for public purposes. *See Town of Kenwood Park v. Leonard,* 177 Iowa 337, 342, 158 N.W. 655, 658 (1916). But upon the incorporation of a city and its acceptance of a plat, village streets become streets of the incorporated town. *See Kelroy v. City of Clear Lake,* 232 Iowa 161, 164, 5 N.W.2d 12, 16 (1942); *Inc. Town of Ackley v. Cent. States Elec. Co.,* 206 Iowa 533, 536, 220 N.W. 315, 316 (1928). Moreover, the streets are held by the incorporated city in fee simple. *See Kelroy,* 232 Iowa at 164, 5 N.W.2d at 16. In *Kelroy,* a plat of the Village of Clear Lake dedicating certain property to the public for use as streets was recorded in 1856. *Id.* at 164, 5 N.W.2d at 14. The Village of Clear Lake was incorporated in 1871, and the city by ordinance accepted the streets. *Id.* at 164, 5 N.W.2d at 15. We held the City of Clear Lake held fee simple title to the streets set out in the plat. *Id.* at 164, 5 N.W.2d at 16. Our decision in *Kelroy* controls here: the City of Cascade acquired title in fee to the streets dedicated in the Second Union Addition plat upon its incorporation and acceptance of the plat.

■ The plaintiffs claim, though, that the City of Cascade never accepted the plat and therefore did not acquire title. Acceptance of a dedication may be by formal action, public use, or implied from " 'some act which unequivocally shows an intent to assume jurisdiction over the thing dedicated.' " *The Sons of the Union Veterans of the Civil War v. Griswold Am. Legion Post 508,* 641 N.W.2d 729, 734 (Iowa 2002) (citations omitted). In an early case, this court held a city's act of including an addition in its corporate limits was adequate acceptance so as to pass fee title in the streets to the city by operation of law. *City of Des Moines v. Hall,* 24 Iowa 234, 242–43 (1868); *accord* 23 Am. Jur.2d *Dedication* § 47, at 42 (2002) (stating "[f]ormal acceptance may consist of . . . an act of . . . incorporating a town, or adopting a map showing its limits"). The record here establishes the city's acceptance of the streets dedicated in the Second Union Addition in a similar manner. As noted earlier, the Second Union Addition was included in the city limits of the City of Cascade. This act was sufficient acceptance so as to pass title to the streets to the city.

■ The plaintiffs also make much of the fact that the city was not incorporated until twenty-three years after the plat was recorded, implying that after twenty-three years of nonuse it was too late for the city to acquire an interest in the platted streets. We disagree. The recording of the plat was a tender of those portions of the land set aside as streets. *Burroughs v. City of Cherokee,* 134 Iowa 429, 432–33, 109 N.W. 876, 878 (1906). This tender continues "until something has been done to indicate to the public that the tender has been definitely and permanently withdrawn." *Town of Kenwood Park,* 177 Iowa at 343, 158 N.W. at 659. There is no proof in the record before us that the prior owners of the platted land in Second Union Addition withdrew their tender in the twenty-three years prior to the incorporation of the City of Cascade. The mere passage of time did not prevent the city from accepting the tender of the public streets when it was incorporated in 1880. We now consider whether the facts and circumstances since the city's incorporation have served to divest the city of title.

V. *Adverse Possession/Equitable Estoppel.*

■ As stated above, the district court rejected the plaintiffs' equitable estoppel claim, but held the plaintiffs had acquired title to the streets under the doctrine of adverse possession. "It has long been the rule in Iowa that the doctrine of adverse possession does not apply to governmental entities." *Fencl,* 620 N.W.2d at 816 n. 5. Thus, proof of adverse possession alone will not defeat a city's interest in land. Consequently, the district court's judgment cannot be affirmed upon a theory of adverse possession.

■ We turn, then, to the plaintiffs' alternative claim of equitable estoppel.

The species of equitable estoppel required to establish title to property claimed adversely to a governmental entity includes three elements: (1) "conduct on the part of the city indicating an abandonment of its interest," including actual nonuse for more than ten years; (2) "a claim of ownership through adverse possession"; and (3) unfair damage to the claimant if the city were permitted to assert its interest. *Id.* at 816. While we have serious doubts that any of these elements are established by the record before us, we limit our discussion to the first requirement—abandonment.

■ The plaintiffs rely on this court's decision in *Brewer v. Claypool,* 223 Iowa 1235, 275 N.W. 34 (1937), for the proposition that when "private rights have been acquired by adverse possession, an abandonment may be presumed." 223 Iowa at 1238, 275 N.W. at 35. If this statement was ever an accurate announcement of Iowa law, it is no longer. We have held in a long line of cases since *Brewer* that "[i]n order to prove abandonment, actual acts of relinquishment accompanied by an intention to abandon must be shown." *Allamakee County v. Collins Trust,* 599 N.W.2d 448, 451 (Iowa 1999); *accord City of Marquette v. Gaede,* 672 N.W.2d 829, 834 (Iowa 2003); *Marksbury v. State,* 322 N.W.2d 281, 286–87 (Iowa 1982); *Town of Marne v. Goeken,* 259 Iowa 1375, 1382, 147 N.W.2d 218, 224 (1966). "Mere nonuse is not enough." *Fencl,* 620 N.W.2d at 816; *accord Kelroy,* 232 Iowa at 168, 5 N.W.2d at 17 ("mere non-user will not of itself defeat the public title to a street"); *Kuehl v. Town of Bettendorf,* 179 Iowa 1, 9, 161 N.W. 28, 32 (1917) (same). Thus, the failure of a small town to improve a street "before public convenience requires it, will not amount to either an abandonment or an estoppel." *Kuehl,* 179 Iowa at 9, 161 N.W. at 31; *accord Wolfe v. Kemler,* 228

Iowa 733, 740, 293 N.W. 322, 325 (1940) (noting that not " 'all the streets shown upon [a] plat will be immediately opened and used,' " and that it might be many years before future growth and development requires that the platted streets be opened and improved (citation omitted)); *McClenehan v. Town of Jesup*, 144 Iowa 352, 357, 120 N.W. 74, 76 (1909) (stating "to create [an] estoppel something more must be shown than a failure to demand the opening of the public way before the growth or expansion of the town has made such demand reasonably necessary").

Upon our review of the record, we find no affirmative evidence of the city's intent to abandon the streets dedicated in the Second Union Addition. To the contrary, the city's actions over the years, while intermittent, were always consistent with its claim of ownership of the streets. These actions included the city's specification of the grade of the streets, its renaming of the streets, its vacation of a portion of one street, its maintenance of the gravel road, its delivery of garbage and recycling service over the gravel road, and its construction of Adams Street with radii curbs to facilitate connection with the Second Union Addition streets. The plaintiffs, having failed to prove abandonment, cannot rely on the doctrine of equitable estoppel to support their claim of ownership.

## VI. *Marketable Title Act.*

■ The district court held the plaintiffs had established their title to the property under Iowa Code section 614.31 (2001). That statute provides in pertinent part:

> Any person who has an unbroken chain of title of record to any interest in land for forty years or more, shall be deemed to have a marketable record title to such interest as defined in section 614.29, subject only to [matters not relevant here].

Iowa Code § 614.31. This statute has no application here because the plaintiffs cannot show "an unbroken chain of title of record" to the platted streets. The record discloses no conveyance or title transaction in the plaintiffs' chain of title that includes the streets of the Second Union Addition. In fact, the plaintiffs' own deed clearly conveyed only the blocks and lots in the addition, not the streets. *See City of Marquette*, 672 N.W.2d at 835 (rejecting claim based on marketable title act in part because recorded deed upon which claimants relied did not include disputed property). Schmidt's subsequent quit claim deed which purported to convey her interest in the streets to the plaintiffs was ineffectual as she had no interest in the streets to convey. *See McClenehan*, 144 Iowa at 358–59, 120 N.W. at 76 (holding quitclaim deeds by grantors did not strengthen the plaintiff's claim to disputed property where grantors only had title to property as lots and not to streets and alleys). The trial court erred in concluding section 614.31 gave the plaintiffs marketable record title to the disputed property.

## VII. *Summary and Disposition.*

The city's inclusion of the Second Union Addition plat within the city limits vested fee simple title to the dedicated streets in the city. There is no evidence the city thereafter intended to abandon its interest in the streets. Therefore, the city is not equitably estopped from asserting its ownership interest in this lawsuit. In addition, the plaintiffs have failed to establish marketable title under Iowa Code section 614.31 because they do not have an unbroken chain of record title to the streets. The trial court erred in quieting title in the disputed tracts of land in the plaintiffs.

Therefore, we reverse and remand for entry of judgment in favor of the city.

**REVERSED AND REMANDED.**

All justices concur except, LARSON, J., who takes no part.