**LOUISA COUNTY CONSERVATION BOARD, Plaintiff–Appellant,**

v.

**John Dennis MALONE, Defendant–Appellee.**

**No. 09–0358.**

Court of Appeals of Iowa.

Nov. 25, 2009.

Roger A. Huddle of Weaver & Huddle, Wapello, for appellant.

William L. Matthews of Hicklin & Matthews, Wapello, for appellee.

Heard by SACKETT, C.J., VOGEL and MANSFIELD, JJ.

SACKETT, C.J.

The Louisa County Conservation Board (board) appeals from the district court's ruling that quieted title to abandoned railroad right-of-way in the adjoining property owner, John Malone. The board contends (1) Malone's right to title under Iowa Code chapter 327G (2007) is extinguished by the doctrines of laches and/or estoppel, (2) the board established ownership by adverse possession, and (3) the district court had no right to quiet title to the property in Malone. We reverse and remand.

## I. Background Facts and Proceedings.

The board filed its petition to quiet title in July of 2008. It claimed to be the absolute owner in fee simple of a portion of abandoned railroad right-of-way in Louisa County, Iowa, based on title acquired by quit-claim deed. Malone filed an answer denying the board's claims and alleging he was the absolute owner in fee simple following extinguishment of the railroad's easement based on abandonment of the easement and reversion of title to him as successor in interest to the original grantors of the easement.

The district court traced the history of the disputed property from the easement grant to the railroad through to the Malones as owners of the servient estate and the chain of quitclaim deeds from the railroad through to the board. It considered the evidence from the board, the county assessor, and Malone. Based on Iowa Code sections 327G.76 and .77 and *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85 (Iowa Ct.App.1994), the court concluded that upon abandonment of the easement and removal of the tracks, the right-of-way reverted by law to the adjoining landowner. The court further concluded neither laches nor equitable estoppel as equitable doctrines permit the board to defeat or extinguish statutory rights. Finally, the court concluded the adverse possession claim failed because the board's predecessor in title, Hoover Nature Trail, Inc., at the time it issued a quit claim deed to the board in 2005, "was fully aware of the fact that it did not have any claim of right or color of title" based on the *Butler* decision concerning the portion of the right-of-way that adjoins the portion at issue here.

Having concluded the ownership of the right-of-way vested in the Malones when the railroad's abandonment of the right-of-way was completed in 1985, the court denied the board's petition to quiet title and request for attorney fees and granted John Malone's counterclaim to quiet title in him. The board appeals.

## II. Scope and Standards of Review.

Our review of equitable actions is de novo. Iowa R.App. P. 6.907 (2009). We must examine the facts as well as the law and decide the issues anew. *Johnson v. Kaster*, 637 N.W.2d 174, 177 (Iowa 2001). In doing so, we give weight to the district court's findings of fact, especially concerning credibility of witnesses, but are not

bound by them. Iowa R.App. P. 6.904(3)(*g* ).

## III. Merits.

▮▮▮ The board contends it established ownership of the property by adverse possession. "A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *C.H. Moore Trust Estate v. City of Storm Lake*, 423 N.W.2d 13, 15 (Iowa 1988). The doctrine of adverse possession is strictly construed because the law presumes possession is under regular title. *Mitchell v. Daniels*, 509 N.W.2d 497, 499 (Iowa Ct.App.1993). The burden is on the plaintiff to show all the elements of adverse possession by clear and positive proof. *Carpenter v. Ruperto*, 315 N.W.2d 782, 784 (Iowa 1982).

The district court found the board's claim of adverse possession failed because of defects in the board's claim of right or color of title. We find the board provided clear and positive proof of its claim of right or color of title.

▮▮▮ A claim of right is evidenced by taking and maintaining property, such as an owner of that type of property would, to the exclusion of the true owner; in other words, the plaintiff's conduct must clearly indicate ownership. *I–80 Assocs., Inc. v. Chicago, Rock Island, & Pacific R.R. Co.*, 224 N.W.2d 8, 11 (Iowa 1974). Acts of ownership include occupying, maintaining, and improving land. *Lynch v. Lynch*, 239 Iowa 1245, 1255, 34 N.W.2d 485, 490–91 (1948). It also may be evidenced by giving a deed in transferring the property or paying real estate taxes. *See Burgess v. Leverett & Assocs.*, 252 Iowa 31, 36, 105 N.W.2d 703, 706 (1960).

▮▮▮ "Color of title is that which in appearance is title but in reality is no title."

*Grosvenor v. Olson*, 199 N.W.2d 50, 52 (Iowa 1972). The chain of quit claim deeds linking back to the railroad gives the appearance of title. Certainly the appearance of title was sufficient for the county assessor to collect property taxes when appropriate.

The district court reasoned that our 1994 decision in *Butler* precluded a claim of right in this case. We respectfully disagree. In *Butler*, which involved Hoover Trail's disputed claim to a nearby segment of the same abandoned rail line, we expressly noted that Iowa law provides for the railroad's easement rights to revert to the owners of the adjacent property upon abandonment. 530 N.W.2d at 89. The district court in this case thus concluded, "At the time Hoover Nature Trail issued a quit claim deed to the [board], it was fully aware [based on the *Butler* decision] that it did not have any claim of right or color of title to the property." However, this analysis overlooks the fact that Hoover Nature Trail or its predecessor had already been in continuous possession of the property since 1985, when the abandonment was completed. When Hoover Trail obtained its deed to the property in 1990, it did so in good faith. By the time Hoover conveyed the property to Louisa County in 2005, the adverse possession clock had already run.

▮▮▮ Under Iowa law, the critical question is whether Hoover Trail *entered* into possession in good faith based on a deed that appeared to be valid on its face, and there is no question that it did.

"It is the settled doctrine of this court that, when one who in good faith enters into possession of a tract of land under a deed conveying the same to him absolutely without exception or reservation, and continues in possession thereof for ten years, all outstanding claims or in-

terests in or to said tract are completely barred by the statute of limitations." *Collins v. Reimers*, 181 Iowa 1143, 165 N.W. 373, 375 (1917).

The district court erred in dismissing the claim for failure of proof of this element because there is clear and positive proof the board's predecessors entered into possession under color of title and a claim of right.

Adverse possession also requires proof the "possession" was "hostile, actual, open, exclusive and continuous" for at least ten years. *C.H. Moore*, 423 N.W.2d at 15. Although "mere use" is insufficient to establish hostility or claim of right, certain acts, including substantial maintenance and improvement of the land, can support a claim of ownership and hostility to the true owner. *Johnson*, 637 N.W.2d at 179; *Simonsen v. Todd*, 261 Iowa 485, 489, 154 N.W.2d 730, 733 (1967). Here, the board and its predecessors in interest [1] openly maintained and used the property from at least 1990, when Hoover Nature Trail received its first quitclaim deed from Hawkeye Land Company.[2] Hoover Nature Trail brought in and spread gravel, cleared brush, mowed, and trimmed trees—in general maintaining the property as a developed nature trail. The board also mowed and trimmed trees. Hoover Nature Trail placed a sign near where the right-of-way met the road. Hoover Nature Trail paid property taxes on the land. It transferred its interest in the property by deed to the board.

Malone testified, rather vaguely, that he did some things to the property. He conceded that "they put some gravel in there," but claimed that he also smoothed the surface thereafter. He claimed his late wife had also done some mowing. He said he grazed his cattle on the land. He claimed he put "keep out" signs on the right-of-way, but "the DNR I think tore them off." He further testified he sometimes would walk down to the property and tell people walking along the trail that the ground belonged to him and they were not supposed to be there. However, he acknowledged he knew the board and Hoover Nature Trail had quit claim deeds, that Hoover Nature Trail put up signs, and that they tried to control the use of the property. Malone also acknowledged he made no effort until 2007 to notify the assessor that he owned the property and did not pay taxes on it. He admitted that various legal documents he executed describing the land he and his wife owned prior to 2007 all expressly excluded the railroad right-of-way, as did the court officer deed in June of 2007 that conveyed his deceased wife's interest in their property to Malone.

The following exchange in cross examination of Mr. Malone illustrates the elements under consideration:

Q. And there's a sign there that says no authorized vehicles, right? A. Yep.

Q. You didn't put that there, did you? A. Nope.

Q. Do you have reason to believe someone else did? A. Hoover Nature Trail did.

Q. Okay. So you had reason to believe that Hoover Nature Trail was trying to control the usage of this property over the years, did you not? A. With a

---

**1.** The continuous time in possession and use of the property by multiple predecessors in interest to the board may be tacked together when determining proof of the elements of adverse possession. *See, e.g., Johnson v. Kaster,* 637 N.W.2d 174, 178 (Iowa 2001); *Lakeside Boating & Bathing Inc. v. State,* 344 N.W.2d 217, 222 (Iowa 1984).

**2.** Hawkeye issued a second quitclaim deed to Hoover Nature Trail in 1992.

quit claim deed, yeah. They had a quit claim deed is all they had.

Q. Mr. Malone, you also had reason by the fact that they put signs up that they were trying to control the usage of that property, were they not? A. I told the trail boss, the signs—I told the trail boss I can—that you can have a quit claim deed, do anything you're going to do to it, but the ground still belongs to me. I know the guy's name, but I can't think of it right now.

The district court concluded the board's claim based on adverse possession was without merit. It found insufficient proof the board's predecessors in interest had paid property taxes. It found any significant improvements had been made by the predecessors in interest, and the board had "only mowed and trimmed trees." From our review of the record, we conclude the district court's findings concerning adverse possession are not supported by the record. We also question Malone's credibility after careful review of his testimony.

We conclude the district court erred when it rejected the board's adverse-possession claim. The board and/or its predecessors in title openly, notoriously, continuously, and hostilely used the railroad right-of-way for more than ten years under color of title and claim of right. The district court should have quieted title in the board. We reverse the decision of the district court and remand for entry of an order quieting title in the board. Because our resolution of the adverse possession claim is dispositive of this appeal, we need not and do not address the other claims raised.

**REVERSED AND REMANDED.**