# IN THE COURT OF APPEALS OF IOWA

No. 18-0742
Filed July 24, 2019

**CITY OF ST. LUCAS,**
        Plaintiff-Appellee,

**vs.**

**DENNIS HERBERT LANGRECK,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Fayette County, Richard D. Stochl and Margaret L. Lingreen, Judges.

        Defendant appeals the district court's decision ordering him to remove a building and pay damages. **AFFIRMED.**

        Patrick A. Ritter of Ritter Law, PC, West Union, for appellant.

        Dustin T. Zeschke of Swisher & Cohrt, P.L.C., Waterloo, and Patrick B. Dillon of Dillon Law, P.C., Sumner, for appellee.

        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

Dennis Langreck appeals the district court's decision ordering him to remove a building and pay damages. We conclude the district court did not err by granting summary judgment to the City on Langreck's counterclaims for quiet title or adverse possession. We also conclude the court did not err in granting an injunction to the City requiring Langreck to move a shed. We affirm the decision of the district court.

### I.      Background Facts & Proceedings

This case involves a shed that is in poor shape and does not have a foundation or a basement. Its dimensions are sixteen by twenty-four feet. Initially, everyone believed the shed was entirely on property owned by the City of St. Lucas. Beginning in at least 1976, Edmund Schmitt owned the shed and paid rent to the City. After Schmitt died, Dennis Boyer purchased the shed from Schmitt's estate. The City had records of rental payments by Boyer for most years from 1986 to 2004.

The property adjacent to the shed was owned by Urban Kreiner. In an affidavit, Kreiner stated, "[A]s far as I understood, the shed was located completely on City land." Kreiner sold the property in 2003 to Langreck. A survey of the City conducted in 2005 showed the shed was partially located on property owned by Langreck and partially located on property owned by the City. Neither Kreiner nor Langreck ever received any rental payments from Schmitt or Boyd for the presence of the shed on their property.

On May 31, 2013, the City filed a petition to quiet title to Parcel S, which included the City's property running underneath the shed. Notice of the action

was made by publication. Notice was not personally served on Langreck or anyone else. The district court entered an order quieting title of Parcel S to the City.

The City informed Boyer on January 15, 2014, his lease was terminated because he "stopped paying rent several years ago." Boyer was told to vacate the premises and remove the shed by March 1. Boyer told the City he would move the shed but asked for more time. Instead, however, Boyer sold the shed to Langreck on April 10.

On June 3, the City filed an action against Langreck, claiming the shed was trespassing on the City's property. The City sought damages and an injunction requiring Langreck to remove the shed from the property. In his answer, Langreck raised counterclaims on the grounds of adverse possession, acquiescence under Iowa Code chapter 650 (2014), quiet title, and unjust enrichment.

The City filed a motion for summary judgment on Langreck's counterclaims. Langreck resisted the motion. The district court granted the motion for summary judgment. The court found (1) the doctrine of adverse possession does not apply to governmental entities; (2) chapter 650, involving acquiesced boundaries, did not apply in this situation; (3) the issue of title was established in the 2013 quiet title action; and (4) there had been no unjust enrichment because the City did not receive any rent for the property during the

time Langreck owned the shed. Langreck filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), which was denied by the district court.[1]

The City then filed a motion for summary judgment on its trespass claim against Langreck. Langreck resisted the motion. The district court found, "It is undisputed that a portion of the shed owned by Defendant is situated on the real estate to which the City of St. Lucas owns title." The court concluded, "Langreck is committing trespass, by allowing a shed owned by him to remain on real estate owned by Plaintiff City of St. Lucas." The court granted the motion for summary judgment to the City on the claim of trespass but determined there remained issues concerning damages and injunctive relief.

A trial was held on the remaining issues. The district court found, "The City wants the building removed because the approach to the building is in need of repair and their insurance company has expressed concerns. The building is also in the way of the City's recycling operation." The court ordered Langreck to remove the building within thirty days," and "[i]f he fails to remove the building, the city shall be free to remove it at Langreck's cost." The court also ordered Langreck to pay the City $1000 "for damages the City has incurred in seeking the removal of the building." Langreck appealed the court's rulings in this case.[2]

## II.     Quiet Title

Langreck claims the district court should not have granted summary judgment to the City on his counterclaim for quiet title because the previous quiet

[1] Langreck filed an application for an interlocutory appeal of the district court's summary judgment ruling. The Iowa Supreme Court denied the application for interlocutory appeal.
[2] Langreck does not dispute on appeal the district court's award of $1000 in money damages.

title action was not binding on him. He asserts service by publication was not adequate to inform him of the action. Langreck also states the 2013 quiet title action was not brought in good faith and the City was not entitled to relief under the clean hands doctrine.

When actions that are normally tried in equity are resolved on a motion for summary judgment, our review is for the correction of errors at law. *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525 (Iowa 2015). "Summary judgment is proper only when the entire record demonstrates the absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Linn v. Montgomery*, 903 N.W.2d 337, 342 (Iowa 2017) (citing Iowa R. Civ. P. 1.981(3)). In a motion for summary judgment, we view the evidence in the light most favorable to the party opposing the motion. *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 806 (Iowa 2018).

A collateral attack on a prior quiet title action could succeed only on a showing of extrinsic fraud in the original case. *Reimers v. McElree*, 28 N.W.2d 569, 572 (Iowa 1947). "It is also the established rule in this state that, where the court had jurisdiction both of the person and the subject matter, a judgment is conclusive against collateral attack, though it be erroneous." *Id.* Where service by publication is in compliance with the relevant statutes and rules, the court has "jurisdiction over both the subject matter and the parties to the action." *Id.*

Langreck claims he should have been personally served with notice of the 2013 quiet title action because he was an adjacent landowner to Parcel S. Under rule 1.302, original notice must be served on a "defendant, respondent, or other party against whom an action has been filed." Rule 1.310 provides service

may be made by publication where "personal service cannot be had on an adverse party in Iowa."

In discussing the 2013 quiet title action, the district court stated:

> Adjoining landowners were not identified, nor served with notice by personal service. However, Iowa Code section 649.2 contemplates a quiet title action is brought against a Defendant who makes or may make some claim adverse to the petitioner. The statute does not presume that adjoining landowners automatically make claims adverse to a petitioner.

The City was not making a claim to any land held by Langreck; it was merely regularizing the legal description of its own property. The evidence does not show Langreck was an adverse party merely by being an adjacent landowner. Also, at the time of the quiet title action in 2013, Langreck did not yet own the shed, so he had no basis to claim an interest in the City's property running under the shed when the action was filed. The evidence does not show Langreck had a legal interest adverse to the City at the time the quiet title action was filed. Because the quiet title action was not filed against him, the City did not have an obligation to serve Langreck with a particular type of notice. *Cf. Parkhurst v. White*, 118 N.W.2d 47, 51 (Iowa 1962) (noting,"To commence a civil action . . . one must serve the *adverse party* with a notice which conforms" with the rules of civil procedure (emphasis added)).

Langreck's other claims concerning good faith and the clean hands doctrine involve assertions of intrinsic fraud. "A claim of false testimony constitutes intrinsic fraud." *Phipps v. Winneshiek Cty.*, 593 N.W.2d 143, 146 (Iowa 1999). A successful collateral attack on a prior quiet title action can only be made by a showing of extrinsic fraud in the earlier case. *Reimers*, 28 N.W.2d

at 572. A collateral attack based on intrinsic fraud is not permissible. *Phipps*, 593 N.W.2d at 147. We conclude the district court did not err by granting summary judgment to the City on Langreck's counterclaim for quiet title.

### III. Adverse Possession

In his counterclaim, Langreck asserted he owned all of the property under the shed under a theory of adverse possession. The district court granted summary judgment to the City on this claim, finding "the doctrine of adverse possession does not apply to governmental entities." On the district court's ruling on a motion for summary judgment, our review is for the correction of errors at law. *McKee*, 864 N.W.2d at 525.

"It has long been the rule in Iowa that the doctrine of adverse possession does not apply to governmental entities." *Stecklein v. City of Cascade*, 693 N.W.2d 335, 340 (Iowa 2005) (quoting *Fencl v. City of Harpers Ferry,* 620 N.W.2d 808, 816 n. 5 (Iowa 2000)). "[P]roof of adverse possession alone will not defeat a city's interest in land." *Id.* We find the district court did not err in granting summary judgment to the City on Langreck's counterclaim based on adverse possession.

### IV. Injunction

Langreck asserts the district court improperly granted an injunction to the City requiring him to remove the building within thirty days," and "[i]f he fails to remove the building, the city shall be free to remove it at Langreck's cost." He states even if the shed is a continuing trespass on the City's property, the proper remedy should be money damages rather than an injunction. He claims it would be more equitable for him to pay the fair market value of the City's property under

the shed instead of being forced to move the shed, as there was evidence the shed may be destroyed if moved.

"When determining whether an injunction is the proper remedy, the court must weigh the relative hardship to each party." *Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 654 (Iowa 2019). "Generally, a party seeking an injunction must prove '(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is [not another] adequate [means of protection] available.'" *Ney v. Ney*, 891 N.W.2d 446, 451 (Iowa 2017) (citation omitted). When an injunction is obtained as an auxiliary remedy in a case, "our review is for the correction of errors at law." *In re Langholz*, 887 N.W.2d 770, 775 (Iowa 2016).

At the trial, the City presented evidence the shed was in the way for people wanting to place items in the recycling bins. The City planned to put asphalt in the area to make it easier to use the recycling bins. Also, the City's insurance company was concerned about the shed remaining on City property because the shed was in poor shape. Dorothy Yauslin, the city clerk, stated the insurance company "talked about upping our insurance policy, our rates." The current mayor, James Rausch, stated it would be a challenge to move the shed and could not "guarantee it's going to make it in one piece." Rausch stated it would cost about $1000 to move the shed.

Langreck testified the City located the recycling bins close to the shed in 2006, although the shed had been in its present location for about forty or fifty years. He stated he believed the City's land under the shed was worth about

$500 to $1000, and he was willing to pay for the land. Langreck stated he wanted to fix up the shed and use it for storage. He argued it would cost more to move the building than the value of the land under the building.

An injunction may be granted to remove a continuing trespass under principles of equity and the specific circumstances of the case. *Nichols v. City of Evansdale*, 687 N.W.2d 562, 572 (Iowa 2004). The presence of the shed on the City's property was an invasion of its property rights. Also, there was potential injury to the City because its insurance carrier stated it might increase its premiums based on the danger presented by the shed in its present poor condition. Rausch testified selling the land under the shed to Langreck would not solve the City's insurance concerns because the approach to the shed was on the City's right-of-way. Finally, the continued presence of the shed prohibited the City from implementing its plans for the area. We conclude the court did not err in granting an injunction to the City requiring Langreck to move the shed.

We affirm the decision of the district court.

**AFFIRMED.**