# IN THE COURT OF APPEALS OF IOWA

No. 22-1191
Filed June 7, 2023

**JAYSON HARPER and ANDREW HARPER,**
Plaintiffs-Appellants,

**vs.**

**CITY OF KESWICK, IOWA,**
Defendant-Appellee.

---

**ALBERT LEER and LEROY LEER,**
Plaintiffs-Appellees,

**vs.**

**CITY OF KESWICK, IOWA, JAYSON HARPER and ANDREW HARPER,**
Defendants.

---

Appeal from the Iowa District Court for Keokuk County, Lucy J. Gamon, Judge.

Appellants appeal the district court ruling granting summary judgment to the City of Keswick on their claims of equitable estoppel. **REVERSED AND REMANDED.**

Samuel E. Jones and Jackson B. Blais of Shuttleworth & Ingersoll, Cedar Rapids, for appellants Jayson Harper and Andrew Harper.

Patrick J. O'Connell and Shawna M. Schamberger of Lynch Dallas, P.C., Cedar Rapids, for appellee City of Keswick, Iowa.

Gregg Geerdes, Iowa City, for appellees Albert Leer and Leroy Leer.

Heard by Schumacher, P.J., and Badding and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

Andrew Harper and Jayson Harper, father and son, appeal the district court's grant of summary judgment to the City of Keswick on the Harpers' claims of equitable estoppel concerning ownership of property originally platted as a street. The City has not shown there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on the elements necessary to establish a claim of equitable estoppel—abandonment, adverse possession, and unfair damage. We reverse the district court's grant of summary judgment and remand for further proceedings. And because we are reversing for further proceedings, we do not address the Harpers' claim of the need for additional discovery before the summary judgment hearing.

## I.    Background Facts & Proceedings

The plat for the City of Keswick includes Cameron Street. A portion of this platted area, however, was neither developed nor used as a street. The parties have conflicting claims concerning ownership of the undeveloped property. The Harpers alleged equitable estoppel and sought to quiet title to the disputed area.[1]

---

[1] Albert Leer and LeRoy Leer filed an action asking for a ruling that the City did not have authority to abandon the property. They own property to the east of the disputed area and asked for an easement over the area for ingress and egress. The actions by the Harpers and the Leers were consolidated by the district court. The court granted in part and denied in part a motion for summary judgment filed by the Leers. Neither the City nor the Leers have appealed that ruling. Therefore, we do not address the City's motion for summary judgment against the Leers or the Leers' motion for summary judgment. They only issues in this appeal relate to the City's motion for summary judgment against the Harpers.

On April 8, 2022, the City moved for summary judgment against the Harpers. It asserted there was a lack of factual and legal basis for the Harpers' claims against the City. The Harpers resisted the motion for summary judgment.

From the petitions, affidavits, and depositions presented by the parties in relation to the City's motion for summary judgment, we can glean the following information. In 1979, Andrew purchased the property to the north of the disputed area. At the time of Andrew's purchase, there was no access to water. Andrew arranged with the City to repair an underground water pit in the disputed area so he could receive water on his property. According to Andrew, he provided the materials for the City to make the repairs. There is a manhole cover over the water pit. Andrew stated the water pit is close to ground level and believed that if a road was built over the disputed area the water pit would need to be removed.

Andrew stated that when he purchased the property it was uneven and vehicles could not be driven on it. He purchased gravel and leveled the property so he could park his semi-truck on it. Andrew also used the disputed area to keep a fertilizer tank and other equipment. And a family friend parked a flatbed trailer on the property. Andrew stated that in about 2019, the Leers began using the area to park a semi-truck with a flatbed. He stated the City never put any property in the disputed area or asked him to remove his property.

Jayson purchased the property to the south of the disputed area from Nutrien Ag Solutions in 2019. A previous owner of the property installed concrete pads that were partially on the disputed area and partially on Jayson's property. [2]

---

[2] The record is unclear as to when the concrete pads were placed in the disputed area.

Some of the equipment owned by Jayson and his father was parked on these concrete pads. The concrete pads are above ground level and this makes it difficult for vehicles to drive through the disputed area. In a deposition, Jayson testified, "I assumed I owned up to my dad's property, that we owned to the middle of all this, because this has never been used, ever, so I just assumed this was already my property, had concrete poured on it."

Jayson stated that when he found out the property had been an alleyway, he went to the city council for a determination of whether he or the City owned the property. He asked to purchase the property if the City owned it. The City voted in February 2020 and again in December 2020 against vacating the disputed area. Jayson stated his intent was to build a shop on the property and connect the shop to his father's shed.

Both Andrew and Jayson testified that they believed they were paying taxes on the disputed property. They mowed grass, removed weeds, and cut some trees on the property.

Following a hearing,[3] the district court found, "There is a strong weight of evidence in this case that the City did not intend to abandon the Disputed Street," and noted the City's decisions to not vacate the property. The court stated that while a city may be deemed to have abandoned property when it permitted parties to occupy the property and pay taxes for it, "[t]he Harpers assert that they 'may' have paid taxes on the Disputed Street, but have produced no evidence in support of this assertion." The court also found the Harpers were unable to show adverse

---

[3] The hearing was not reported, so there is not a transcript contained in the appellate record.

possession because they did not show they exclusively used the disputed area for a period of ten years. The court determined the City used the disputed area for its water distribution system and stated the Leers used the area "to park their semi-truck since at least 1995." Additionally, the court found the Harpers did not show they would suffer unfair damage if the City owned the property. It found the Harpers were "unable to prove that they had a good faith belief that they owned the Disputed Street." The court concluded the Harpers were "unable to establish their claim to the Disputed Street as a matter of law." The Harpers appeal the district court's decision.

## II.     Standard of Review

We review a district court's decision granting summary judgment for the correction of errors of law. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013). Summary judgment may be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The record is reviewed in the light most favorable to the nonmoving party. *Deeds v. City of Marion*, 914 N.W.2d 330, 339 (Iowa 2018).

## III.     Summary Judgment

The party seeking summary judgment has the burden to establish there are no genuine issues of material fact. *Morris v. Steffes Group, Inc.*, 924 N.W.2d 491, 496 (Iowa 2019). There is a genuine issue of material fact "if reasonable minds can differ on how an issue should be resolved." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018). A fact is material if a determination of the matter might affect the outcome of the action. *Est. of*

*Gottschalk v. Pomeroy Dev., Inc.*, 893 N.W.2d 579, 584 (Iowa 2017). "Even if the facts are undisputed, summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions." *Morris*, 924 N.W.2d at 496 (citation omitted).

The facts are viewed in "the light most favorable to the party resisting the motion for summary judgment." *Buboltz v. Birusingh*, 962 N.W.2d 747, 754 (Iowa 2021). "We draw all legitimate inferences the evidence bears that will establish a genuine issue of material fact." *Andersen v. Khanna*, 913 N.W.2d 526, 535 (Iowa 2018). "Inferences may be drawn in favor of the party opposing the summary judgment only if they are rational, reasonable, and otherwise permissible under the governing substantive law." *Butler v. Hoover Nature Trail, Inc.*, 530 N.W.2d 85, 88 (Iowa Ct. App. 1994).

"[A] court deciding a motion for summary judgment must not weigh the evidence, but rather simply inquire whether a reasonable jury faced with the evidence presented could return a verdict for the nonmoving party." *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005). Additionally, the court does not make credibility determinations, as this is a matter reserved for the fact finder. *Newell v. JDS Holdings, L.L.C.*, 834 N.W.2d 463, 473–74 (Iowa Ct. App. 2013).

"[T]o successfully resist a motion for summary judgment, the resisting party must set forth specific evidentiary facts showing the existence of a genuine issue of material fact." *In re Est. of Henrich*, 389 N.W.2d 78, 80 (Iowa Ct. App. 1986). A party cannot rest on mere allegations or a denial of the pleadings. Iowa R. Civ. P. 1.981(5). "Although our rules of procedure allow a nonmoving party to resist

summary judgment, the burden is still on the moving party 'to show the district court that there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law.'" *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005) (citation omitted).

The sole function of a motion for summary judgment is to decide if there is a genuine issue of material fact. *Barnhill v. Davis*, 300 N.W.2d 104, 105 (Iowa 1981); *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 40 (Iowa 1979). If there is, the case must stand for trial. *Brubaker v. Barlow*, 326 N.W.2d 314, 315 (Iowa 1982).

## IV.    Equitable Estoppel

A person may obtain an interest in a city street through the doctrine of equitable estoppel. *Stecklein v. City of Cascade*, 693 N.W.2d 335, 340 (Iowa 2005).

> The species of equitable estoppel required to establish title to property claimed adversely to a governmental entity includes three elements: (1) "conduct on the part of the city indicating an abandonment of its interest," including actual nonuse for more than ten years; (2) "a claim of ownership through adverse possession"; and (3) unfair damage to the claimant if the city were permitted to assert its interest.

*Id.* (quoting *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 816 (Iowa 2000)).

### A.    Abandonment

"We have recognized an established highway or right of way may be abandoned by the public and its rights lost." *Allamakee Cnty. v. Collins Tr.*, 599 N.W.2d 448, 451 (Iowa 1999). The Iowa Supreme Court has stated:

> Abandonment occurs because an owner no longer desires to possess the property. In order to prove abandonment, actual acts of relinquishment accompanied by an intention to abandon must be

shown. Nonuse is not enough to establish abandonment, unless coupled with affirmative evidence of a clear determination to abandon. Obstructions, encroachments, or the failure to keep a road in repair do not necessarily result in abandonment.

*Id.* (citations omitted).

To show abandonment, there must be nonuse of the property for more than ten years, but nonuse of property alone is not enough to show abandonment. *See City of Marquette v. Gaede*, 672 N.W.2d 829, 836 (Iowa 2003). In *Burroughs v. City of Cherokee*, the Iowa Supreme Court stated:

[Y]et where there has been such nonuser for a long time—not less than the statutory period in ordinary cases—and this is accompanied by the actual and notorious possession of the land by an individual as private property under a claim of right, an abandonment will be presumed, and the public right in the street will be held to have been extinguished.

109 N.W. 876, 879 (Iowa 1906). Also, "the occupancy by the individual of the land platted for a street must be inconsistent with its future use for such purpose and exist for such length of time as shows acquiescence by the municipality in the permanent appropriation of the ground for private purposes."[4] *Kelroy v. City of Clear Lake*, 5 N.W.2d 12, 17 (Iowa 1942).

In *Smith v. City of Osage*, the court found Osage had abandoned a street because "it has permitted plaintiff, and those under whom he claims, to occupy the land, which has never been subject to public use, and it levies and collects city taxes thereon." 45 N.W. 404, 406 (Iowa 1890). The court continued:

The law regards this as a declaration by its acts that it holds no claim to the land, and as an abandonment of all claim to the public use of

---

[4] A city may show ownership of a street by actions such as "specification of the grade of the streets, its renaming of the streets, its vacation of a portion of one street, its maintenance of the gravel road, [and] its delivery of garbage and recycling service over the . . . road." *Stecklein*, 693 N.W.2d at 341.

the lands. The city may vacate streets and other public lands, and restore them to private owners by proper action. The same end may be attained by abandonment and non-use, and by taxation, and in other ways treating the land as private property. The city will be estopped to set up any claim to land to which the right of public use has been abandoned by subjecting it to taxation as private property.

*Id.*

On the issue of abandonment, the district court stated, "There is a strong weight of evidence in this case that the City did not intend to abandon the Disputed Street." In ruling on a motion for summary judgment, however, the court does not weigh the evidence. *See Clinkscales*, 697 N.W.2d at 841. To weigh the evidence means there is evidence on both sides of an issue and the court finds there is more evidence or more credible evidence on one side of the issue. This is contrary to the court's responsibility in considering a motion for summary judgment, where the court "simply inquire[s] whether a reasonable jury faced with the evidence presented could return a verdict for the nonmoving party." *Id.* We determine the court improperly "weighed" the evidence.

The court also found the City was using the disputed property because part of the municipal water distribution system was underground there but the court did not cite any legal authority to support this conclusion. The City has not cited any authority to support a determination that underground water pipes show ownership of the property.[5] As the party seeking summary judgment, the City had the burden

---

[5] We note a party may have an easement for a water line, and this may be abandoned. *See Olsen v. Hennings*, No. 11-0659, 2012 WL 1245951, at *1 n.1 (Iowa Ct. App. Apr. 11, 2012); *see also Flinn v. Bosch*, No. 09-1909, 2011 WL 222518, at *1 (Iowa Ct. App. Jan. 20, 2011) (finding there was a "water easement" in the location of underground water lines); *Allied Gas & Chem. Co., Inc. v. World Food Processing, Inc.*, No. 00-1800, 2002 WL 571476, at *1 (Iowa

to show it was entitled to a judgment in its favor as a matter of law. *See Sallee v. Stewart*, 827 N.W.2d 128, 133 (Iowa 2013) ("The burden is on the moving party to demonstrate that it is entitled to judgment as a matter of law.").

On appeal, the Harpers state:

> The existence of water utility lines or equipment does not necessarily mean that the City owns the land, or that the City's access of the water lines should mean the City has used the Disputed Parcel. Utility lines and equipment ostensibly run under and through most properties in Keswick but that does not mean that the City's ability to access these lines and equipment means the owners of the land do not have exclusive possession of their respective land.

The Harpers claimed the City abandoned the disputed area because it had not used the property since 1979 when Andrew asked the City to connect him to the City water system, an event more than forty years ago. They claimed the City allowed the Harpers to use the area without interference. For example, Andrew placed gravel in the disputed area and the Harpers stored equipment there. The Harpers maintained the property by mowing grass, removing weeds, and cutting trees on the property. Both Andrew and Jayson stated they believed they were paying taxes on the disputed area. Looking at the evidence in a light most favorable to the Harpers, we find there are genuine issues of material fact on the issue of abandonment.

## B. Adverse Possession

The second element of a claim of equitable estoppel is the establishment of adverse possession. *Stecklein*, 693 N.W.2d at 340. "A party claiming title by adverse possession must establish hostile, actual, open, exclusive and continuous

---

Ct. App. Mar. 13, 2002) (finding a party "provided an easement to the City of Oskaloosa to install an underground water line").

possession, under claim of right or color of title for at least ten years." *Louisa Cnty. Conservation Bd. v. Malone*, 778 N.W.2d 204, 207 (Iowa Ct. App. 2009). In the City's brief in support of the motion for summary judgment, the first three elements were discussed together (hostile, actual, and open) and then the element of exclusivity. The City did not present any argument on the issues of continuous possession or whether possession was under a claim of right or color of title.

1. The City claimed the Harpers did not take significant steps to maintain, upgrade, and demonstrate ownership of the disputed area. Possession of property is hostile, actual, and open if it "is the type of possession or control owners ordinarily exercise in holding, managing and caring for property of like nature and condition." *Burgess v. Leverett & Assocs.*, 105 N.W.2d 703, 706 (Iowa 1960). This may be shown by actions such as mowing, shoveling, clearing overgrowth, planting trees, erecting barriers, telling others to leave, and paying taxes. *Houston v. Meyer*, No. 13-0478, 2014 WL 69727, at *1 (Iowa Ct. App. Jan. 9, 2014); *see also Jaster v. City of Garber*, No. 17-1761, 2018 WL 6338618, at *3 (Iowa Ct. App. Dec. 5, 2018) (finding plaintiff openly used the disputed area as part of an adjoining field for crops and then conservation land).

As discussed above, the Harpers presented evidence through depositions that Andrew placed gravel in the disputed area. The Harpers stored equipment on the property. A previous owner placed large concrete slabs in the area, making it difficult for vehicular traffic. The Harpers maintained the property by mowing grass, removing weeds, and cutting trees on the property. Both Andrew and Jayson stated they believed they were paying taxes on the disputed area. When the evidence is viewed in a light most favorable to the Harpers, we find there are

genuine issues of material fact on whether they cared for the property as a property owner would care for "property of like nature and condition." *See Pearson v. City of Guttenberg*, 245 N.W.2d 519, 530 (Iowa 1975) (considering whether a party exercised "such open dominion as ordinarily marks the conduct of owners in general in holding, managing, and caring for property of like nature and condition").

**2.** In the City's brief in support of the motion for summary judgment, the City asserted that the Harpers never had exclusive use of the disputed property. The district court addressed only the issue of exclusivity when addressing the claim of adverse possession, finding the Harpers "do not identify a single ten-year period in which they have exclusively used the Disputed Street."

The district court found the City "used" the property due to the location of an underground water line. However, "[a]n individual may adversely possess property subject to utility easements." *Boyle v. Burk*, 749 S.W.2d 264, 266 (Tex. Ct. App. 1988); *see also Koprivec v. Rails-to-Trails of Wayne Cnty.*, 102 N.E.3d 444, 455 (Ohio 2018) (finding there were genuine issues of material fact concerning whether the actions of a telecommunications company on disputed property interrupted the exclusive possession of a party on a claim of adverse possession). We find the underground water lines do not contradict as a matter of law the claim that the Harpers had exclusive use of the property.[6]

---

[6] In *Cronin v. Standish*, on a claim of adverse possession, the defendant asserted the plaintiff's use of a driveway was not continuous due to an easement for a gas line through the disputed property. No. S-05-023, 2006 WL 2384091, at *3 (Ohio Ct. App. Aug. 18, 2006). The court determined the plaintiff's use of the property was uninterrupted because the "the construction of the gas line in no way impeded or interrupted their ability to use the driveway." *Id.* at *4. The court concluded the claim of adverse possession was not negated by the underground gas line on the property. *Id.*

On the issue of exclusivity, the court also found, "The Harpers acknowledge that the Leers have had access to the Disputed Street to park their semi-truck since at least 1995." This was not acknowledged by the Harpers. The Leers made this assertion and the court cited to statements by the Leers. The Harpers stated the Leers did not begin parking a truck there until 2019.[7] There is a factual dispute in the record on this issue.

Additionally, a friend of the Harpers used the disputed area for parking. Use of property by permission is not contrary to a claim of exclusive use. *Woodruff v. Langford*, 115 N.W. 1020, 1021 (Iowa 1908); *see also Star Enter. v. Warner*, No. 01-A-01-9502-CH00036, 1995 WL 381652, at *3 (Tenn. Ct. App. June 28, 1995) ("[A] mere permissive use will not destroy the exclusiveness of an adverse claimant's possession."); *Stark v. Stanhope*, 480 P.2d 72, 77 (Kan. 1971) ("The permissive use of land by the public does not affect the acquisition of title by adverse possession . . . .").

Finally, the court stated, "Andrew Harper's predecessor in title, Nutrien Ag Solutions, Inc., used the Disputed Street to install and use tanks and bins, which were built on the concrete foundations that exist on the Disputed Street."[8] The actions of a predecessor in interest are not considered to be contrary to a claim of exclusivity; the actions of a party and its predecessors are considered together. *Johnson v. Kaster*, 637 N.W.2d 174, 180 (Iowa 2001) ("There is no evidence Kasters or their predecessors were ever interrupted in their exclusive use of the

---

[7] The Leers' parking on the disputed area according to the Harpers began when the disagreement started, around 2019.

[8] We note that Jayson purchased his property from Nutrien Ag Solutions, not Andrew.

disputed property."); *Kroeze v. Scott*, No. 07-0995, 2008 WL 680748, at *2 (Iowa Ct. App. Mar. 14, 2008) (finding the actions of the defendants and their predecessors supported a claim of adverse possession).

When the evidence is viewed in a light most favorable to the Harpers, we find there are genuine issues of material fact on whether they had exclusive use of the disputed area.[9]

**3.** The district court did not address the issue of whether the Harpers had possession of the disputed area under claim of right or color of title within the context of a claim of adverse possession. *See Louisa Cnty. Conservation Bd.*, 778 N.W.2d at 207. Instead, the court considered whether the Harpers had a good faith belief they owned the disputed property in the discussion of the third element—unfair damage.[10]

Whether considered in the context of adverse possession or unfair damage, however, there is a requirement that a person making a claim of equitable estoppel act in good faith. *Suiter v. City of Princeton*, No. 01-1314, 2003 WL 1785903, at *2 (Iowa Ct. App. Apr. 4, 2003) ("The doctrine of equitable estoppel is based on fair

---

[9] The City did not present any arguments to the district court to claim the Harpers did not have continuous possession. In addition, the court did not rule on this issue. Because the issue was not raised below or addressed by the district court, we do not address the issue on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (finding "issues must ordinarily be both raised and decided by the district court before we will decide them on appeal").

[10] The court cited *Jaster*, which stated, "To require the Jasters—who purchased the property in good faith for valuable consideration and without notice of the City's claim to the disputed property—to give up their right to the property would be inequitable and cause unfair damage to the Jasters." 2018 WL 6338618, at *3 (citing *Fencl*, 620 N.W.2d at 818). In *Fencl*, the good faith of the party asserting equitable estoppel is discussed in the context of adverse possession, not in the discussion of unfair damage. *See* 620 N.W.2d at 818 (stating a claim of ownership through adverse possession must be in good faith).

dealing and good faith."); *Meyer v. Winneshiek Cnty.*, No. 00-1711, 2002 WL 31307350, at *3 n.2 (Iowa Ct. App. Oct. 16, 2002) (same).

In a case involving the good faith of a party seeking compensation for improvements on land, the Iowa Supreme Court stated:

> Good faith in a like connection has been held to be a question of fact to be determined in each particular case. The term is used in its popular sense, as the actual, existing state of mind, whether so from ignorance, sophistry or delusion, without regard to what it should be from given legal standards. Good faith has also been defined as freedom from a design to defraud the person having the better title.

*Meyers v. Canutt*, 46 N.W.2d 72, 76 (Iowa 1951). The term "good faith" is not given a narrow or technical meaning. *Id.*

The City claimed the Harpers could not show a good faith claim of ownership based on assertions relating to color of title. For example, the City states Jayson was aware his property did not include the disputed area and the Harpers' deeds did not include a legal description of the disputed area. A party is not required to show possession of land through both color of title and claim of right; proof of either one is sufficient to show adverse possession. *Council Bluffs Sav. Bank v. Simmons*, 243 N.W.2d 634, 636 (Iowa 1976). "The aforementioned possession by the parties asserting the estoppel must be under a claim of right, and it is not essential to a claim of right that the possession be under color or claim of title. A claim of right to possession is sufficient." *Sioux City v. Johnson*, 165 N.W.2d 762, 769 (Iowa 1969).

Because the Harpers are not required to show possession based on color of title, we will consider whether they could establish adverse possession through a claim of right. *Id.* "A claim of right is evidenced by taking and maintaining

property, such as an owner of that type of property would, to the exclusion of the true owner; in other words, the plaintiff's conduct must clearly indicate ownership." *Louisa Cnty. Conservation Bd.*, 778 N.W.2d at 207. Acts of ownership which may give rise to a claim of right include "occupying, maintaining, and improving the land." *Id.* "'[M]ere use' is insufficient to establish hostility or claim of right," but "certain acts, including substantial maintenance and improvement of the land, can support a claim of ownership and hostility to the true owner." *Eldridge v. Turner*, No. 22-0227, 2022 WL 17826871, at *5 (Iowa Ct. App. Dec. 21, 2022) (citation omitted). The issue of whether a party has established a claim of right is determined on a case-by-case basis. *Mills v. Robinson*, No. 08-0739, 2009 WL 2951479, at *2 (Iowa Ct. App. Sept. 2, 2009).

The Harpers assert that they acted in a good faith belief in ownership of the disputed area based on the City's lack of objection to their use of the land, which "would reasonably tend to lead another to believe that its once intended use as a street is no longer contemplated." *See Fencl*, 620 N.W.2d at 816; *see also Sioux City,* 165 N.W.2d at 769 ("[T]he party asserting the estoppel must act in good faith premised upon conduct of the municipality that would reasonably tend to lead another to believe that its once intended use as a street is no longer contemplated.").

Through depositions, the Harpers presented evidence that Andrew placed gravel in the disputed area. The Harpers stored equipment on the disputed area. Andrew parked his semi-truck in the disputed area. The Harpers maintained the property by mowing grass, removing weeds, and cutting trees on the property.

As the party seeking summary judgment, the City had the burden to demonstrate there was no genuine issue of material fact to show the Harpers did not act in good faith. *See Hollingshead v. DC Misfits, LLC*, 937 N.W.2d 616, 618 (Iowa 2020). A party's good faith may be shown by the payment of taxes or improvements on the land. *Meyers*, 46 N.W.2d at 76–77. Both Andrew and Jayson testified in their depositions that they believed they paid taxes for the disputed area. When the evidence is viewed in a light most favorable to the Harpers, we find there are genuine issues of material fact on whether they cared for the property in a manner to give rise to a claim of right due to "occupying, maintaining, and improving the land." *See Louisa Cnty. Conservation Bd.*, 778 N.W.2d at 207.

## C. Unfair Damage

The third element of a claim of equitable estoppel is whether a party would suffer unfair damage if a municipality were permitted to assert its interest. *Stecklein*, 693 N.W.2d at 340. "This element generally requires the claimant to show that he has made some permanent improvement on the tract." *Witte v. Seidel*, No. 18-1810, 2009 WL 3775115, at *4 (Iowa Ct. App. Nov. 12, 2009) (quoting *Fencl*, 620 N.W.2d at 816). Also,

> A court in equity will not permit a municipality to open a street or alley upon which it has allowed another to make valuable improvements with its knowledge and acquiescence and without objection, and this is especially so where building permits thereon were issued with its approval and the general public will not benefit from the opening.

*Sioux City*, 165 N.W.2d at 769.

"[T]he fencing in of a street or the planting of trees, shrubs, flowers and grass are not such permanent improvements as work an estoppel, even though the city does not complain." *Kelroy*, 5 N.W.2d at 20. On the other hand, "[t]he erection of buildings or the making of other permanent improvements will be sufficient basis for an estoppel." *Johnson v. City of Shenandoah*, 133 N.W. 761, 764 (Iowa 1911). There may be undue damage to a private citizen even though large sums of money are not involved. *Fencl*, 620 N.W.2d at 818.

A party who filled in a swamp, installed utilities, constructed paved driveways, and planted trees was determined to have installed permanent improvements to his property. *Sioux City*, 165 N.W.2d at 769. Requiring a party to "remove his fence, cut down his trees, and remove his buggy shed" was determined to show undue damage. *Johnson*, 133 N.W. at 764. Undue damage was found in a situation where a party would "have to move [a] shed—a permanent improvement—from the tract, or he [would] have to pay for the property." *Fencl*, 620 N.W.2d at 818.

As discussed above, the Harpers presented evidence through depositions that Andrew placed gravel in the disputed area in order to level it. We conclude there are genuine issues of material fact concerning whether the Harpers made permanent improvements in the disputed area and would suffer unfair damage if required to remove these improvements.

We reverse the district court's grant of summary judgment to the City and remand for further proceedings. And because we are reversing for further proceedings, we do not address the Harpers' claim that additional discovery was necessary before entry of the summary judgment ruling.

**REVERSED AND REMANDED.**